LAYSON, BY HIS GUARDIAN, Respondent, v. ROGERS, Appellant.

1. A. executed a deed of gift of a slave to B. with a reservation to the donor during her lifetime of "the use and benefit of the labor" of the slave—the donee to take possession at the death of the donor; *held*, that this deed, being unrecorded and unaccompanied with possession in the donee, was void, under section four of the act concerning fraudulent conveyances, (R. C. 1845, p. 526,) as against a subsequent purchaser from A., though with notice. (SCOTT, J., dissenting, holding that said section contemplated a deed of gift of an interest to take effect presently in possession in the donee.)

*Appeal from Platte Circuit Court.*

This was a suit for the possession of a negro slave. The plaintiff, William L. Layson, claimed title by virtue of the following instrument: "For and in consideration of the sum of one dollar, to me paid in hand by Mary C. Layson, for William L. Layson, the receipt whereof is hereby acknowledged, and for the love and friendship for said William L. Layson, my grandson, I, Hannah Layson, do hereby grant, bargain and sell to said William L. Layson, a negro boy named James Washington, commonly called Washington. Said boy was born my property, and is a slave for life—reserving to myself the use and benefit of the labor of said boy during my lifetime, but at my death to be the property of said William L. Layson; and this deed of gift and bill of sale authorizes and empowers said William L. Layson to take and keep possession of said boy at or immediately after my death. Given under my hand and seal, &c. [Signed] Hannah Layson. (Seal.)"

Rogers, defendant, claimed title to said negro by virtue of a deed of transfer of a date subsequent to that of the deed above set forth. The remaining facts of the case sufficiently appear in the opinion of the court.

*Gardenhire* and *Hall*, for appellant, cited R. C. 1845, p. 526, sec. 4; Cook v. Clippard, 12 Mo. 379; Bryson v. Penix, 18 Mo. 15; 15 Mo. 420.

*J. W. Morrow, Davis, Wilson* and *Hardin, jr.*, for respondent.

I. The smallest consideration is sufficient. (4 Kent Com. 440; 3 Johns. 491; 8 Cow. 430; Story's Contracts, 431.)

II. A conveyance voluntary, without delivery of possession, is good between the parties. (R. C. 1845, p. 526; 3 Litt. 278; 2 Brevard, 38; 9 Gill & Johns. 77; 9 Port. 65; 5 Hump. 392; 7 Harr. & Johns. 257; 5 Pet. 264; 12 Johns. 536.)

III. A voluntary conveyance is good against a subsequent purchaser with notice. (Lancaster v. Doland, 1 Rawle, 231; Foster v. Walton, 5 Watts, 378; 5 Watts, 456; Sprise v. McCoy, 6 Watts & Serg. 485; Hudnal v. Wilder, 4 McCord 295, 310; Maultin v. Jennings, 2 McMullen, 508; Howard v. Williams, 1. Bailey, 575; Bank of Alexandria v. Patton, &c., 1 Robinson, Va., 500, 540; Carprew v. Arthur et al., 15 Ala. 525; Farmers' Bank v. Douglass, 11 Sm. & Marsh. 472, 548; Bohn v. Headley, 7 Harr. & Johns. 257; Cathcart v. Robinson, 5 Pet. 265, 280; Verplank v. Terry, 12 Johns. 536; Jackson v. Town, 4 Cow. 6 *a*; 2 Leigh, 84; 3 Grattan, 35; 3 Strobhart, 62.)

IV. It is admitted that Hannah Layson continuing in possession of the slave conveyed, and the omission of the plaintiff to have his deed of conveyance recorded, (if it be considered a deed for a consideration not deemed valuable in law,) according to the fourth section of the statute upon fraudulent conveyances, makes such conveyance void *per se;* but it is only as against creditors and subsequent purchasers in good faith. A purchaser with notice can not claim to be a purchaser in good faith.  Actual notice of a prior claim is considered *per se* evidence of " *mala fides ;*" that the word purchase, as used in the fourth section, means a purchaser in good faith. Therefore defendant's subsequent purchase, with notice of the plain-

tiff's prior claim, was made in fraud of his rights, and is void in law. (Jackson v. Burgott, 10 Johns. 459 ; Dunham v. Day, 15 Johns. 568 ; Jackson v. Post, 15 Wend. 594 ; 17 Wend. 27 ; Sanger v. Eastwood, 19 Wend. 514 ; 4 Kent Com. 169.)

LEONARD, Judge, delivered the opinion of the court.

There are three classes of cases in which our written law provided, as early as 1816, that the possession of personal property should be considered as the real ownership in favor of creditors and purchasers from the party in possession, *unless the true condition of the title was manifested by a deed or will authenticated and recorded in the manner prescribed for that purpose*—a gift, from one who continued in the possession notwithstanding the gift—a loan, where the borrower had remained five years in the uninterrupted possession of the thing borrowed—and all limitations of personal property, by way of condition, reversion, remainder or otherwise, where the future right was separated from the present possession. (Act of January, 1816, 1 Terr. Laws, 439.) And subsequently, at the revision of 1845, a similar provision was made in reference to mortgages and deeds of trust of personal property. (Tit. Fraudulent Conveyances, sec. 8.) The act of 1816 did not originate here, but came to us from Virginia, from whose statute book (12 Henning's Statutes) it has been copied into the laws of several of the western states ; and the provision of 1845 was adopted from the Massachusetts act in relation to mortgages of personal property. (Rev. Stat. of Mass. ch. 74, sec. 5.) The main, indeed the only, purpose of these statutes being, not the protection of the party himself, but to suppress frauds upon creditors and purchasers, which were found to be so easily perpetrated by means of feigned or secret transactions of this character, it has been frequently insisted in the application of them to cases occurring in real life, that, if the party has actual notice, it was equivalent to the recorded instrument, and ought to be so considered in construing them, in

analogy to the construction that was originally adopted in reference to the required registry of conveyances of real property, in order to render them valid against the same class of persons. But this construction has, it is believed, been uniformly rejected in reference to the act of 1816, not only in Virginia, where the act seems to have originated, but also in all the states where it has been re-enacted ; the courts holding that the object of the legislature, in the particular cases provided for, was, whenever the possession was separated from the right of property, to place the latter where the apparent ownership was in favor of creditors and purchasers, unless the transaction was accompanied by a recorded instrument, and in this manner to shut out and conclude in all such cases all questions as to the real title. Accordingly, it was decided in Virginia, in 1811, in Gay v. Moseley, (2 Munf. 543,) that five years' continued possession of a slave by the borrower transferred the ownership to him in favor of a creditor who had actual notice of the unrecorded deed, and the same doctrine is acted upon in Tennessee.  (Andrews v. Hatfield, 3 Yerg. 39,) and a similar construction seems to prevail in Massachusetts in reference to their provision concerning mortgages of personal property (Travis v. Bishop, 13 Metc. 304); and this court adopted the same construction of the act of 1816 in Cook v. Clippard, (12 Mo. 379,) where it was determined that the purchaser of a slave from a borrower, who had continued in possession five years without any recorded instrument manifesting the loan, acquired the title, although he purchased with full knowledge of the circumstances.  These decisions, we may remark, do not conflict with the English adjudications upon their registry laws.  These acts contain no exception excluding from their operation a party having notice, and the English law courts never ventured to put such an exception into them by construction.  It is true, the English court of chancery did this substantially by holding that, although the statute bound the legal title, the notice bound the conscience of the second purchaser, and converted him, notwithstanding the statute, into a trustee of the legal title for the

benefit of the party who by his first purchase was justly entitled to the land ; but yet this equity precedent would hardly justify us, when called upon to put a legal construction upon the act now under consideration, in declaring that creditors and purchasers with notice are excepted out of its operation. Indeed, this equity doctrine of notice has thus far, it would seem, been confined in England to conveyances of real property, which is subject to a double ownership, equitable as well as legal, and it is by no means certain that a court of equity would extend it to transfers of personal property, which the interests of commerce and the convenience of daily life would seem to subject to a different consideration. In answer to the case of Sanger v. Eastwood, (19 Wend. 161,) to which we have been referred in argument, we may remark, that the construction there given to the provision in the New York code concerning mortgages of personal property proceeds upon the peculiar language of their act. *Bona fide* creditors and purchasers are the words there used, and the same words in their registry laws for the conveyance of real property having been previously construed, by reference to the equitable doctrine of notice, to exclude such as had notice of the true condition of the title, the same construction was applied to them here, and resulted in the decision referred to. But our legislature have not incorporated this doctrine into our statute now under consideration, either by excepting out of its operation parties with notice, as they have provided in reference to parties who have notice of unregistered conveyances of real property, or by expressly confining the act to *bona fide* creditors and purchasers, as is done in the New York act ; and their omission to do so would seem to furnish an additional, if not a conclusive reason, against our incorporating it into the law by judicial construction.

In the case now before us the instrument of gift transfers the slave, reserving the use and benefit of his labor to the grantor during her life, and expressly authorizes the grantee to take possession of him as his property at her death. It purports on its face to be made in consideration of the love the

grantor bears her grandson, the grantee, and is designated by the party herself as a "deed of gift and bill of sale;" and the instruction of the court was, that, although not recorded, it was valid between the parties to pass the title, and that it was also valid against the defendant if "he purchased with notice of the prior transfer." The instruction, it is thus seen, proceeds upon the assumption that an unregistered gift, in good faith, unaccompanied by the possession, is valid against a subsequent purchaser with notice; and whether this be so, is the question that has been argued before us as the turning point in the case, and upon which therefore we shall determine it. In the construction of the statute there is no difference in reference to the matter of notice between a loan and a gift, and assuming that the transaction between the grandmother and the grandson was a gift (and such apparently was its real nature, no matter what form it may have assumed), according to the case of Paul and Clippard the title remained in the giver, notwithstanding the gift, in favor of a purchaser with notice of the unregistered gift, and the second instruction given at the instance of the plaintiff was therefore erroneous.

It has been suggested that the statute embraces only gifts of present interests, because they only are capable of being accompanied by the possession, and that it ought not to be construed to extend to future estates in personal property like the present, which it is said must be looked upon as substantially a remainder to take effect in possession after the expiration of the grantee's life interest; but we do not feel the force of this suggestion. Both the words and the spirit of the act extend equally to gifts of *future* as well as *present* interests, and we see no ground whatever for making any distinction between them in the construction of the statute, unless it be that *every future interest* is to be considered as falling within the clause that provides for limitations by way of condition, remainder, &c., in which event the present limitation, if unregistered, would be void even if founded upon a valuable consideration. But this matter has not been argued before us, and we refrain

from expressing any opinion about it. It is enough for the case now presented, that, in our opinion, a gift is void against a purchaser, whether it be of a present or of a future interest, unless it be accompanied by the possession of the thing given, or by a recorded instrument of gift, and the result is the judgment must be reversed, and the cause remanded for a new trial; and, Judge Ryland concurring, the court so order.

SCOTT, Judge, dissenting. The question discussed in the argument of this case was, whether the conveyance to Wm. L. Layson, being a voluntary one and unrecorded, could prevail against Wm. Rogers, the defendant, who was a subsequent purchaser with notice of the prior unrecorded voluntary deed.

The question which weighs on my mind is, whether the deed to Layson is within the meaning of the fourth section of the statute concerning fraudulent conveyances. The deed in question only conveys an estate in remainder to Layson. His right to the slave mentioned in the deed was not to begin in enjoyment until the determination of the previous life estate reserved to the grantor. The statute provides that every gift of slaves, not for a consideration deemed valuable in law, shall be void against all purchasers, unless possession shall really and *bona fide* accompany such gift. From this language, I am inclined to the opinion that a gift of the nature of that under consideration is not within the words of the statute. The gift contemplated by this section is one in which the thing given is designed to be the property immediately of the donee, to take effect in possession presently. This construction of the statute harmonizes with the common law. That system of law only affects with fraud those conveyances which seek, contrary to the nature of the transaction, to separate the use or possession of property from its title. Where there is an absolute sale or gift of chattels, the nature of the alienation requires that immediate possession should follow it. This case is as if a grantor, for a valuable consideration, should convey to a purchaser a chattel for a limited period, and at the same time should grant his re-

versionary interest in the chattel to a donee. Is there any principle which, in such case, would defeat the title of the donee? I know of none, unless it is a rule of law that no valid remainder in a chattel can be created but by deed duly recorded. There is nothing in the fifth section of the act which is opposed to this view of the subject. That section was designed to prevent an owner loaning property from parting with its possession to another for a limited time, and reserving an interest in it to himself. Here, there is nothing of the kind. This is a gift to take effect *in futuro*. It is created by deed, and is like those numerous instances in which the law protects an interest in a chattel which is not reduced to possession. Nobody will pretend that the owner of a slave may not loan him for a limited period, and at the time of the loan convey the reversionary interest in the slave to another without a recorded deed. If a slave is hired for a number of years, may not the owner convey his reversionary interest without a deed duly recorded?

The case of Bryson & Hardin v. Penix, (18 Mo. 18,) shows that a purchaser of personal estate is not affected by any notice of an unrecorded deed under the statute concerning fraudulent conveyances.