The State, to use of Voullaire, v. Tasker.

THE STATE TO USE OF VOULLAIRE, Respondent, v. WILLIAM H. TASKER *et al.*, Appellants.

| 31 | 445 |
| 36a | 504 |

| 31 | 445 |
| 49a | 88 |
| 51a | 436 |

| 31 | 445 |
| 125 | 559 |
| 57a | 300 |

| 31 | 445 |
| 63a | 332 |

| 31 | 445 |
| 65a | 132 |

1. A deed of trust or mortgage of personal property may be void in part and valid in part, under Sec. 1 of Statute of Fraudulent Conveyances.

2. The possession of personal property by the grantor in a mortgage or deed of trust to secure creditors will not avoid the deed; it is the possession with the power of sale in the grantor which defeats the instrument, and the effect will be the same although neither expressed nor necessarily implied from the terms of the deed.

3. If the right to possession and power of sale in the grantor appear upon the face of the deed, it will be a fraud in law; but if it do not appear upon the face of the deed, but in evidence upon the trial, it will be fraudulent in fact. The statute thus provides, upon principles of public policy, without regarding the actual intention of the parties.

4. A deed of trust of the machinery, tools and fixtures of a manufacturing establishment will not be void because the grantor, by the terms of the deed, retains the possession for the purpose of carrying on his business, no implication of law arising that he retains any authority to dispose of the property thus conveyed.

5. A deed of trust, conveying the machinery, tools and fixtures of a manufacturing establishment, contained this additional clause: "Also, all property goods, tools, wares, materials, pictures, machinery, stock, rough or finished materials, and all things whatever now, or that may be hereafter used, bought or belong to the said party of the first part, in the course of his usual trade or business." *Held*, that such deed was not void upon its face. (See following cases: Voorhis v. Langsdorf; State, to use, &c., v. D'Oench.)

## *Appeal from St. Louis Circuit Court.*

This was an action againt the parties to a bond given to the sheriff, to recover the value of machinery, tools and fixtures of a gas-fitting and plumbing establishment, together with a quantity of pipe and materials of trade, which had been levied upon by virtue of an execution in favor of Tasker against one Cooke. The plaintiff Voullaire notified the sheriff that he claimed the property; that it was of the value of two thousand five hundred dollars, upon which the defendant Tasker gave the sheriff the bond of indemnity sued upon, and required the sheriff to sell.

Upon the trial the plaintiff offered in evidence two deeds of trust made by Cooke, defendant in the execution, one

29—VOL. XXXI.

dated September 30, 1857, which conveyed the machinery, tools and fixtures, and materials, in a shop, No. 59 Olive street; the other dated March 5, 1858, which specified the property conveyed, with this clause in addition; " And, also, all property, goods, tools, wares, materials, fixtures, machinery, stock, rough or finished materials, and all things whatsoever now, or that may be hereafter used, bought or belong to the said party of the first part, in the course of his usual trade or business." Both deeds secured the same debt.

The defendants moved to exclude said deeds as void and fraudulent upon their face as made to the use of the grantor, which motion was refused.

The case was put to the jury upon instructions from the court, leaving to them to decide the question of fraud in fact. The jury found for the plaintiff the value of the property taken.

*U. Wright* and *Page*, for appellant.

The deed of March 5, 1858, was void upon its face. (Howell v. Bell, 29 Mo. 137.) Its effect was to delay creditors, as it allowed Cooke to remain in possession, buy, sell and work up his materials in the ordinary course of his business. (Reed v. Pelletier, 28 Mo. 177 ; Hall v. Webb, 28 Mo. 408 ; Zeigler v. Maddox, 26 Mo. 575 ; Stanley v. Bunce, 27 Mo. 269 ; Billingsley v. Bunce, 28 Mo. 547 ; Walter v. Wimer, 24 Mo. 863 ; Martin v. Maddox, 24 Mo. 575 ; Martin v. Rice, id. 581 ; Brooks v. Wimer, 20 Mo. 503 ; Robertson's ex'r v. Robards, 15 Mo. 459.

*Lackland*, and *Cline & Jamison*, for respondents.

I. This deed was duly recorded, and the grantor was entitled to retain possession, there being no use reserved to the grantor. (Stanley v. Bunce, 27 Mo. 269 ; 15 N. Y. 122 ; 17 Barb. 309 ; 16 Ala. 560 ; 22 Ala. 238.)

II. The question of fraud was properly left to the jury, as a matter of fact. (Sibley v. Hood, 3 Mo. 208 ; Little v. Beach,

14 Mo. 160 ; Baldwin v. Beach 14 Mo. 597 ; Gales v. La-
beaume, 19 Mo. 17 ; Carson v. Murray, 15 Mo. 380 ; Powell
v. Matthews, 10 Mo. 50 ; 15 Mo. 63, 383.)

BATES, Judge, delivered the opinion of the court.

This case was heretofore submitted to the court, and an
opinion prepared by Judge Napton, but no judgment entered
upon it. The parties now consent that judgment may be en-
tered in accordance with that opinion. Therefore, the other
judges concurring, the judgment below is affirmed.

NAPTON, Judge. The invalidity of such deeds as were
passed upon by the court in Brooks v. Wimer, 20 Mo. 503,
Walter v. Wimer, 24 Mo. 63, and Stanley v. Bunce, 27 Mo.
270, is based upon a principle of public policy embodied in
our statute concerning fraudulent conveyances. No actual
fraudulent intention is imputed to the grantors or grantees
in such deeds, but the attempted disposition of the property
is considered inconsistent with the rights of creditors—a vir-
tual exclusion of the property from a liability to levy ; whilst,
at the same time, the debtor retains not only the use of it,
but an absolute power of disposition. The effect is, of course,
that the property thus shut up from the reach of general cred-
itors may be entirely disposed of without the proceeds going
either to the outside creditors or to the beneficiaries in the
deed. The only party certainly benefitted by it is the debtor
or grantor, who has the power to convert every portion of
the property to his own use. The deed, if sustained, would
serve the purpose of protecting the property against the
grantor's creditors, and at the same time authorize him to
convert it to his own use by an absolute sale. It is not the
mere possession of the property by the grantor, but it is the
possession, with the power of sale, which defeats the instru-
ment; and if this appears to be the intent of the parties, al-
though neither expressed in terms or necessarily implied
from the deed, yet the effect must necessarily be the same.
(Reed v. Pelletier, 28 Mo. 177.) But where this character-

istic is not stamped on the face of the deed, either expressly or by implication, the question is for the jury, under instructions explanatory of the facts, which will constitute legal fraud. It is like the case of a voluntary conveyance by a party who is insolvent. Whatever may be the intentions of the parties, such conveyances are invalid against prior creditors, and no inquiry into the motive is necessary. A conveyance or assignment may, however, be *totally* inoperative, by reason of some rule of law; for some purposes, and yet may be entirely operative for others. It is not a question of fraud in fact, but of fraud in law; and when the law is satisfied, the question is then open for the jury as to the intentions and object of the instrument. Thus in the case of Stanley v. Bunce, the instrument conveyed land and slaves as well as merchandise. The only question in that case was as to the efficacy of the instrument to carry the merchandise, and, so far as that property was concerned, the deeds were pronounced void. But it is not to be inferred that the deeds failed to convey the land or the slaves. No authority was given to the grantor to retain possession of either the land or slaves; and if there had been, unless he had also the power of disposing of them, the transfer was valid. If the law pronounced such a conveyance void, or inoperative, because the retention of the possession and the power of disposition was considered conclusive of actual fraud, the rule would be different; but we have seen that this is not the ground upon which the statute is based, but it rests upon a principle of public policy. The intentions of the parties, as in cases of voluntary conveyances, may be entirely honest; but, to put an end to all questions of intention, or fraud in fact, the legislature have thought it expedient to prevent such transfers of property from affecting creditors as impolitic and dangerous, and tending to promote fraud. So far, then, as a deed or a written transfer of personal property falls within the prohibition of the statute, it is void; but so far as it does not, it may be effectual. Because a deed or instrument is ineffectual for some purposes, it does not follow that it is for all, unless the

defect in it, or the objection, reaches every part of it, and runs through the whole instrument. In the case of Howell v. Bell, 29 Mo. 137, it was held that a conveyance of land and slaves, with a stipulation in it that the grantor should retain possession, was not within the first section of an act concerning fraudulent conveyances. If the deed had also contained a transfer of cattle or merchandise, with a power in the grantor to sell them, the deed would have certainly fallen within the principle declared in Brooks v. Wimer, and to that extent would have failed, but it would have been still effectual to convey the land and the negroes.

The present case involves the construction of two deeds, in many respects differing from any of those heretofore passed upon by the court. They are transfers, in trust to pay debts, of the machinery, fixtures, tools and materials of a manufacturing establishment. The first deed is admitted to be unexceptionable. The second deed embraces all the property enumerated in the first, and is for the security of the same debts, but embraces some additional property of the same description, and contains this additional clause: "Also, all property, goods, tools, wares, materials, fixtures, machinery, stock, rough or finished materials, and all things whatever now, or that may be hereafter used, bought or belong to the said party of the first part, in the course of his usual trade or business."

It is insisted that these expressions, by a necessary implication, recognize the right of the grantor to retain possession and dispose of the property conveyed, and therefore bring the deed within the principle heretofore established by this court. These two deeds may be considered as embracing, in the main, without going into details, two classes of property. The first class comprises the machinery and other incidental requisites to a manufacturing establishment; and the second consists of the materials upon which the labor, both artificial and natural, is to be expended.

In reference to the first class of property, it is evident that no implication arises from the fact that the grantor is left in

possession, that he has any power of selling them in order to carry on his business; on the contrary, the implication is otherwise. The mechanic can not carry on his trade without his tools; and if the intention be to go on with his business, it must also be intended that he shall retain the implements and machinery by which alone it can be conducted. So far, therefore, as these deeds convey the machinery in the workshop, it is clear that they do not fall within the objection of being a conveyance to the use of the grantor alone. They are no more liable to this objection than would be the conveyance of a farm or of slaves, to be retained by the grantor and worked for his benefit. Such property is not to be consumed in the use, although, like land and slaves, they may possibly be injured and deteriorated to some extent.

In relation to the materials in the shop or manufactory, there is more difficulty; but even in reference to them it must be observed that they differ essentially from mere articles of merchandise. So far as the second deed attempts to embrace after-acquired materials, we can not see how the beneficiaries could be injured by such a clause; for even if the power of sale is to be implied, yet the grantee only loses the value of the labor bestowed on them. There is this difference between materials, either on hand at the date of the deed or to be acquired in future: that no implication can be made, from any general power given to the grantor to carry on his trade or business, that they are to be sold as such in their crude shape, but they could only be designed for sale after their value had been increased by the labor and skill of the artisan. It would be going very far to infer from a clause which recognized the right of the grantor to prosecute his business as a mechanic, that he had necessarily to buy and sell the materials upon which he was to be employed. His labor might be profitably employed upon the materials furnished by his customers. In looking into the evidence in this case we find that all, or nearly all, the gas and steam pipe which was found in the workshop had been furnished by others for repair, and was claimed by its owners. In

short, it is quite plain that the articles were of great value ; the great bulk of the property conveyed by these deeds consisted of the machinery and fixtures of the establishment. Our conclusion is that the circuit court was right in refusing to declare either of these deeds void upon its face.

In relation to the instructions upon the question of actual fraud, we have not perceived any serious objections. The testimony on this point is indeed so conclusive of the *bona fides* of the debt, that even if some one of the numerous given instructions might be considered questionable, it would appear to be hopeless to expect a different result.

The disparity between the amount of damages and the sum for which the property actually sold at the sheriff's sale, is no ground for a reversal of the judgment. The property evidently sold at a great sacrifice, as such property necessarily or ordinarily will, when sold under the hammer. This was a matter for the jury, and there was ample evidence to sustain the verdict.

Judgment affirmed.