CITY OF BATH, *in Equity, versus* GILBERT MILLER & *als.*

In replevin, a judgment for return is a direct and conclusive adjudication that the defendants' right of possession is superior to the plaintiffs'.

The lien provided for in § 11, c: 450 of the Special Laws of 1860, took effect at the time the liability was incurred, and could not include property not then owned by the company.

Where a railroad company, by virtue of a special Act of the Legislature, mortgaged to the plaintiffs not only all of the property then owned by both the new and the old portions of the road; — *Held*, that wood, subsequently purchased with the earnings and for the use of the whole road, would not pass by said mortgage, and is attachable.

Attaching creditors would hold such wood as against any lien of the plaintiffs, claimed by a subsequent taking possession under § 6, c. 450, of the Special Laws of 1860.

If the mortgagee of wood, attached as the property of the mortgager, replevy the same from the attaching officer, and permit it to go back into the possession of the mortgager, who burnt it with the knowledge and consent of said mortgagee; the mortgagee thereby waives all lien held by virtue of the mortgage.

BILL IN EQUITY.

The bill alleges that, before March 17, 1860, the Androscoggin Railroad Co. had constructed and operated their road from Farmington, in Franklin county, to Leeds, in Androscoggin county; that, on said 17th March, said company had been authorized by an Act of the Legislature to extend its road from Leeds to Brunswick; that said company were

deeply in debt, had mortgaged all their property, and were wholly unable, of their own means, to construct the proposed extension; that said proposed extension, though of great public importance, was likely to fail for want of means; that, with a view to effect the purpose aforesaid, the complainants, by said Act of the Legislature, were authorized to loan its credit to said company, to aid in the construction of said proposed extension, in a sum not exceeding $200,000, subject to certain conditions, &c., which said Act was duly accepted by the complainants; that, on Jan. 1, 1861, said company having done and performed all the conditions, &c., required by said Act to entitle them to receive aid from said complainants, to the amount of $100,000, the complainants issued to the directors of said company the scrip of the complainants for the sum of $100,000, for the purposes aforesaid, payable in thirty years, with coupons for interest, payable semi-annually; that, on Nov. 11, 1861, the complainants issued their scrip for the amount of another $100,000 for the same purposes, with coupons; that, by the Act of Legislature of Feb., 1861, the complainants were authorized to loan their credit to said company in the further sum of $200,000, to aid in the construction of said extension; that the complainants, in accordance with the provisions of said Act, issued their scrip for the amount of $200,000, with coupons; that the whole was appropriated and expended for the purposes aforesaid; that said extension was completed and operated by means thereof, &c.; that all of said scrip is still outstanding and obligatory upon the complainants.

The bill further alleges that, by virtue of the provisions of said Acts of March 17, 1860, and February 7, 1861, said company executed and delivered to the complainants a mortgage of said extension of said railroad, and of all the property of said extension which they then had or might subsequently acquire, and the franchise of said extension, and embracing in said mortgage the original road of said company and all the property, including the franchise thereof;

and it was provided in said Act that said mortgage, being
executed, &c., should be and was therein declared to be a full
and complete transfer of said extension and all of the pro-
perty of said extension, real and personal, then or subse-
quently to be acquired, and also a full and complete transfer
of said road from Leeds to Farmington, and all of the pro-
perty of said road; and it was further provided in and by
said Act, that, as an additional and cumulative protection to
the complainants, that all liabilities which said complainants
might assume or incur under said Act, should at the time,
and by force thereof, and for the security and payment of
the same, create, in favor of the complainants, a lien on the
whole of said railroad, its franchise and all its append-
ages, and all real and personal property of said railroad
corporation, which should have preference and be prior to
all liens and incumbrances whatever, on the said extension,
and on all other property of said corporation, &c.; that
said company executed and delivered to the complainants
the mortgage provided for in Act of Feb. 7, 1861, both of
which mortgages were duly recorded.

It further alleges that, by virtue of said mortgages and
Acts, the complainants acquired a lien on the whole of said
railroad, its franchise, and other property, real and personal,
then owned or to be subsequently obtained, and of the earn-
ings of said road; that afterwards, and at different times
between Jan. 1, and Sept. 1, 1862, said company purchased
for the purposes of operating said road, divers quantities
of wood, in said counties of Androscoggin and Franklin,
making payments therefor from the income and earnings
derived from the use and operation of said road through its
whole extent and every part thereof, indiscriminately, and
deposited said wood in various places where the same might
be convenient for use, within the limits of said counties;
that, by virtue of said Acts and the mortgages made in pur-
surance thereof, the complainants acquired and still have a
lien paramount to all other liens, incumbrances or attach-
ments, &c.; that, in January, 1863, said company neglect-

ed to pay certain sums of interest due on a portion of said scrip; that, subsequently, a demand was made upon the complainants for payment under said Acts; that, by reason of such neglect and non-payment, the complainants, on April 28, 1863, by virtue of the Act of March 17, 1860, and in the manner therein provided, took actual possession of the whole of the said railroad, and all of its property, real and personal, and of the franchise thereof; that, since January, 1863, said company have neglected to pay certain other sums of said interest, and payment thereof has been demanded of the complainants.

It further alleges that, in Sept., 1862, one Dyar, sued said company and attached, through one Gilbert Miller, a deputy sheriff, all of said wood in Androscoggin county, being 1,319 cords, as the property of said company; that immediately thereafterwards one Andrew T. Tuck, a deputy sheriff, attached on the same writ all of the said wood in Franklin county, being 952 cords, as the property of said company; that, subsequently, said suit was assigned to J. C. Woodman and Ezekiel Treat; that judgment was recovered in said suit, on which execution issued July, 1864, which is in full force; that several other suits have been commenced against said company, all of which have been assigned to said Woodman, and on all of which the said Miller and Tuck, in their respective counties aforesaid, attached, as the property of said company, all of said wood subject to the prior attachments; that judgments have been duly obtained in all of said suits, and executions issued thereon in July, 1864, and are still in force.

It further alleges that it became indispensable for the running and operation of said road, and the earning and obtaining the income thereon for the payment of the interest on said scrip, to use and consume all of said wood, and to obtain possession of the same for that purpose; that, by legal advice, the complainants, in Dec., 1862, replevied against said Miller the wood so attached by him, and gave bond in due form to prosecute said suit; that said wood was

delivered to the complainants according to the precept of said replevin suit, and was and has been wholly consumed by the consent of complainants in operating the said railroad, under the direction of said company, and in obtaining income for the payment of interest on said scrip; that the Court adjudged that said replevin suit could not be maintained, for the reason, that, by said Act of March aforesaid, the lien of the complainants should be enforced by bill in equity, and directed and ordered said wood to be returned to said Miller; that the complainants replevied against the said Tuck the wood so attached by him, and duly gave bond, which said suit is still pending, and which said bond is still outstanding, whereby the complainants are exposed to a suit on the same,— it not being in their power to return said wood, should such be the order of the Court; that they have offered to pay all costs in the Miller suit, and are willing to pay the costs in the Tuck suit, if such shall be the order of the Court; that neither Miller, Woodman or Treat has sued out any writ of restitution, nor made any demand for a return of said wood, &c.; that the said Miller sued the said bonds given by the complainants in the Miller suit, and threaten to prosecute the same, thereby intending to deprive the complainants of the lien, security and protection which they have and are entitled to hold under said Acts and mortgages, &c.

The bill prays that the said Miller, Tuck, Woodman and Treat. may be made parties; that the said Miller and Tuck may be enjoined from commencing or prosecuting any suits on any said bonds, or suing out any process at law with a view to recover said wood, or the value thereof, or in any way to deprive the complainants of their lien on the same; that said Dyar, Treat and Woodman may be enjoined against enforcing their said attachments; but that the same may be decreed void and be dissolved.

The respondents severally answered, admitting the main facts alleged, but denying that the complainants obtained any lien upon said wood by virtue of the aforesaid Acts of

the Legislature, or of said mortgages for the reasons which appear in the opinion, and pleaded the judgment for return recovered in the replevin suit by Miller, in bar.

The case was heard on bill, answer and proof.

*Seth May*, for the complainants.

The extension was of great public importance.

The Androscoggin R. R. Co. was insolvent and unable to construct the extension.

The Legislature, after providing the various securities and remedies in the statute preceding § 11, with a view of giving other and enlarged security to the complainants, as an inducement for the complainants to loan its credit for the great enterprise, and to make them absolutely secure for all liabilities it might assume, and thereby to protect the complainants, at all events, against loss, so far as the property of the company could possibly do it, provided, by the new, distinct and separate provisions in § 11, for a lien as broad as the whole property which the company might then or subsequently have, on the whole line of the road from Brunswick to Farmington, both real and personal; and also gave a remedy, by a bill in equity, as broad as the lien itself.

Upon such inducements, the complainants loaned its credit to aid in the construction and completion of a great public necessity, and to deprive the complainants of the lien would be unjust and oppressive.

By § 4 of the Act of March 17, 1860, the mortgage therein provided for is expressly made to cover, not only all existing property, but all the property subsequently to be acquired by the company. Same provision is in § 4, c. 18, 1861. *Min. Co.*, v. *St. Paul Co.* 2 Wallace, 645, and note by reporter.

The money loaned of the complainants was expended for the subsequent acquisition of personal and real property; and, if the mortgages had not covered subsequently acquired property, they would have furnished little or no security.

"All" includes in its application personal and real property to be acquired.

The liabilities creating the lien necessarily preceded the purchase of land and rolling stock of the extension; and, unless the intention of the Legislature was, that the lien for liabilities assumed should attach to the road, as it should come into existence, and to the real and personal estate connected and subsequently purchased, they would not have guarded the restricted lien against all other liens and incumbrances upon the whole property, which might subsequently be created by the company or by attachments.

By § 6, the complainants are authorized, under certain conditions, to take possession of "the whole of said railroad and all the property, real and personal, of said company." This provision extends, not only to the whole road as it exists when such possession is taken, but to the whole of the rolling stock and appendages, including wood upon the line in the various wood-houses. 23 Howard, 126; *Pierce* v. *Emery*, 32 N. H., 384; Red. on Railways, 589. "All property, real and personal, of the company," must embrace wood. *Woodman* v. *Y. & C. R. R. Co.*, 45 Maine, 207. Wood is a fixture or appendage, indispensable.

The Legislature did not intend to restrict the lien to property owned "at the time" when the lien commenced, because large portions of it would be used up, worn out or destroyed long before the liabilities assumed would become due.

The lien was not to be limitied by the liabilities assumed at the time, because the Act expressly provides, (§ 4,) that such mortgage shall be given upon the receipt of the first issue of the scrip; and, by § 2, the only aid to be given was to be by the issuing of scrip. A liability assumed in any other way would not be a liability embraced within the lien. The statute lien was "additional and cumulative" to the securities before provided, and antecedent to the existence of liabilities assumed.

The public interests forbid the attachment of the wood. *Hill* v. *La Crosse R. R. Co.*, 11 Wisconsin, 214.

The mortgage covered wood as much as rolling stock. *Morrill* v. *Noyes*, 53 Maine; also cases cited by C. J. REDFIELD in Law Register, 32, 1863; *Pennock* v. *Coe*, 23 Howard, 126.

*J. C. Woodman*, for the respondents.

WALTON, J.—On the 9th of Sept., 1862, a quantity of wood was attached as the property of the Androscoggin Railroad Company. In December following, the inhabitants of the city of Bath, claiming to have a lien on it to secure them against certain liabilities they had assumed for the railroad company, replevied the wood in two suits, one against Andrew T. Tuck, a deputy sheriff, who attached a portion of the wood lying in Franklin county, and one against Gilbert Miller, a deputy sheriff, who attached another portion of the wood lying in Androscoggin county. The former suit is said to be still pending. The latter has been determined in favor of the attaching officer, *and the wood ordered to be returned to him.* This order was not obeyed, and a suit has been commenced on the replevin bond, and the prayer of the bill now under consideration is that Miller and Tuck may be enjoined against commencing or prosecuting any suit or action on the replevin bonds, or from instituting any proceedings to recover the wood, or the value of it, or in any way to deprive the city of the lien which it claims to have on it, and that the attaching creditors may be enjoined against enforcing or taking any legal measures to enforce the attachments, and that the same may be declared void and be dissolved.

The defendants deny that the city of Bath have, or ever had a lien on the wood; and contend further, that the judgment and order for a return, in the replevin suit against Miller, is a conclusive adjudication in favor of the attaching officer, and against the pretended claim of the plaintiffs.

1. *Of the former judgment.* In actions of replevin, judg-

ment may be rendered against the maintenance of the suit, and yet the defendant not be entitled to a return of the property. When *non cepit* alone is pleaded, the defendant cannot have judgment for a return, because the taking only is in issue, and not the title to the property. So, if for any cause, the defendant was entitled to the possession of the property when the action was commenced, but his right to possession has expired, or been extinguished, or lost, at the time judgment is rendered, the defendant is not entitled to judgment for a return. Hence, in actions of replevin, when it is determined that the action cannot be maintained, it is always necessary to inquire and determine, and to have a distinct adjudication, whether or not the property shall be returned to the defendant; and this latter inquiry necessarily involves an inquiry into the title and the right of possession as between the contending parties, of the broadest and most unlimited character. It is a well established and familiar rule of law, that a return of property replevied will not be ordered " when in equity it ought not to be returned, though the defendant has judgment in his favor in the suit." In determining whether or not there shall be a return, the power of the Court, and the extent of ·inquiry, are as unlimited in an action of replevin as in a suit in equity. A judgment for return, therefore, in an action of replevin, must be regarded as a direct and conclusive adjudication that the defendants' right of possession is superior to the plaintiffs'.

In *Bath* v. *Miller*, the plaintiffs set up precisely the same title, derived from the same source, by the same means, as that which they now set up. The defendant relied solely upon the validity of the attachments which he, as an officer, had made, and his right to keep possession of the property to satisfy the judgments, if any, which the attaching creditors might recover. Upon this issue he obtained judgment for a return. Was not this a direct adjudication that his title was superior to the plaintiffs'? Could such a judgment

have been rendered without such an adjudication? Clearly not.

But the plaintiffs assume that the Court determined that the replevin suit against Miller could not be maintained, for the reason that, by the provisions of the Act of March 17, 1860, the lien of the city could be enforced and protected only by proceedings in equity. In the opinion of the Court, this is stated as one reason why an action of replevin could not be maintained to enforce a lien created by the *eleventh section* of that Act; but, by taking the whole opinion together, it is clear that this was not intended to be given as the only reason why the action could not be maintained. On the contrary, the previous reasoning, which is as applicable to a lien created by the eleventh section as to a lien created by the mortgages, shows that the wood had been purchased by the railroad company under such circumstances, and with funds that had accrued in such a way, that the plaintiffs had no lien upon it in either of the modes they had set up. The opinion states expressly that the wood was attachable, and that a lien was created by the attachment, which could not be true if the plaintiffs had a valid lien on it. This was sufficient to dispose of the whole case. To be sure, the opinion then states, as another reason why the action could not be maintained for any supposed lien the plaintiffs might have under the eleventh section, that their rights, if any, under that section, were to be protected by a bill in equity rather than a suit at law. This remark was inserted only as an additional reason why the action could not be maintained, after enough had already been said to dispose of the case in favor of the defendant. The Court had declared that the wood was attachable, and that a valid lien had been created by the attachments. This was a good and sufficient reason why the action of replevin could not be maintained, and adding another to it did not invalidate it, even if the latter should be found to be fallacious. If a valid lien had existed in favor of the plaintiffs, it would have been the lien itself, wholly independent of any measures

that might be adopted to secure or protect it, that would invalidate the attachments; and, when the attachments were declared valid, the invalidity of the plaintiffs' pretended lien was necessarily established. The latter was correlative to that of the former. The two liens were inconsistent and could not both exist at the same time. And, if the Court could have seen that the plaintiffs had a valid lien, however created, it would not, and could not, with propriety, have rendered judgment for a return of the property to the attaching officer. The judgment for return was necessarily an adjudication in favor of the validity of the attachments, for upon no other hypothesis could the officer have been entitled to a return. The contingency that the Court might decide against the maintenance of the suit, and yet not order a return, was by no means overlooked. The parties took the precaution to insert in the report, that, if the defendant prevailed in the suit, he should not have judgment for a return, unless the Court should be of opinion that he was entitled to it. The question of return or no return was, therefore, distinctly presented for adjudication. Such a judgment must have its legitimate effect, even if the reasoning by which it was supported does not necessarily show it to be right. The opinion is no part of the judgment, and it would be a most dangerous doctrine to hold that judgments could be impeached by showing that the reasoning, by which they were attempted to be sustained, is defective or fallacious.

But we do not think the former decision was erroneous. If the questions involved were now before us for the first time, we see no reason for coming to a different conclusion. We will briefly review the grounds on which the plaintiffs found their claim to a lien on the wood in question.

2. *Of the lien claimed by the plaintiffs.* Our attention has been called to three Acts of the Legislature, (Act of March 17, 1860, Act of March 20, 1860, and Act of Feb. 7, 1861,) authorizing the city of Bath to loan its credit to the Androscoggin Railroad Company, and directing how the city should be secured. The aid was granted and the secu-

rity given. The object of this aid was to enable the railroad company to make an extension of their road from Leeds Junction to Brunswick; and one of the peculiar features of these statutes, authorizing the aid and providing security for the city, is that they treat and speak of the *extension* as if it was to be a distinct and independent road, and provide that the security of the city upon the extension, and the property belonging to it, shall be much more full and complete than upon the property belonging to the old portion of the road, or such as should belong jointly to both portions of it. The statutes referred to authorize, and the company executed to the city certain mortgages, which in terms convey, not only all the property *then* owned by both the new and the old portions of the road, but " *all the property of said extension subsequently to be acquired.*" It is claimed that the city obtained a lien upon this wood by virtue of these mortgages.

The wood in question was purchased subsequently to the execution of these mortgages. It was purchased with the earnings of the *whole* road, for the use of the *whole* road, and we think it must therefore be regarded as the *property* of the whole road, and not the property of any particular portion of it. It is therefore unnecessary to determine whether after acquired property, belonging exclusively to the extension, would pass by these mortgages or not, for this wood was not the exclusive property of the extension, and it is very clear that none other would pass. The affairs of this road were in a peculiar condition. It could be said of one piece of property, this belongs to the whole road; of another piece, this belongs exclusively to the old portion of the road; of a third, this belongs exclusively to the new portion of the road, called the *extension*. This will be made plain by reading the legislation in relation to it, and observing the subsequent action that has taken place in pursuance of it. With respect to after acquired property, such only as should belong exclusively to the new portion of the road, was attempted to be conveyed by the mortgages.

The same is true of the earnings. By the Act of March 20, 1860, the company was authorized to mortgage the *extension* of said road, with its franchise, right of way, rolling stock, and all the property belonging thereto, *with its earnings;* and, if this wood had been purchased with the separate earnings of the extension, and for its separate use, the argument for the plaintiffs would be very much strengthened.

But such was not the case. The wood was not bought with the exclusive earnings of the extension, but with the joint earnings of the whole road, and for the use of the whole road. The wood cannot, therefore, be regarded as the property of the extension, and the plaintiffs fail to establish a lien to it by virtue of their mortgages.

The *sixth section* of the Act of March 17, 1860, provides that, in case of neglect of the company to pay the principal or interest of the scrip issued by the city, as it should become due, the city might take possession of the road, and all its property, and hold the same and apply the income to make up and supply such deficiency, and all other deficiencies that might occur while the same is so held, until such deficiencies are fully made up and discharged. It is claimed that after this wood was attached the city took such possession, and that thereby its inchoate lien became perfected, by virtue of which they are entitled to the wood as against the attaching creditors. The defendants deny that the city ever took such possession in good faith, or that there has been such a failure to pay either principal or interest of the scrip, as would authorize them to take such possession. But, suppose it to be true that the city for a sufficient cause took such possession, it would thereby acquire no greater rights than were at the time held by the company. The property must be taken *cum onere.* Vested rights, valid attachments, would not be thereby destroyed. The plaintiffs fail, therefore, to establish such a lien by virtue of proceedings under this section as will defeat the attachments.

But there is still another ground on which the plaintiffs

City of Bath *v.* Miller.

claim to prevail. As additional security to the city, the Act of March 17, 1860, § 11, provides that "all liabilities which by said city may be assumed or incurred, under or by virtue of any of the provisions of this Act, shall *at the time*, and by force thereof, and for security and payment of the same, create in favor of said city a lien on the whole of said railroad, its franchise, and all its appendages, and all real and personal property of said railroad corporation."

This lien, it will be observed, is to take effect *at the time* the liability is incurred, and, of necessity, can attach to such property only as the company then own. The liability and the lien, by the very terms of the statute, are to come into existence at the same moment. The incurring of the one instantly creates the other, and there is no provision for enlarging this lien or creating a new one at a subsequent period. This wood was purchased long after all the liabilities of the city were incurred. Acts creating liens should not be construed to attach to after acquired property, any more than grants or mortgages, unless such is the plain meaning of the language used. Such is not the plain meaning of the language here used. On the contrary, the language used excludes such a construction. The lien provided for in this section is to take effect at the time the liability is incurred, and cannot be held to include property not then owned by the company.

But there is another and wholly independent view of the case, which we regard as conclusive against the plaintiffs; namely, if they ever had a lien on the wood, it is very clear that they have waived it. Every stick of the wood, long before this bill was filed, was consumed by the railroad company in running their cars, except ten cords, and that was used by one of the employees of the road; *and all this was done with the knowledge and consent of the plaintiffs themselves.* This is stated in the bill, (page 9,) and agreed to in the statement of facts. With what propriety then can this Court be called upon to interfere by way of injunction, under pretence that it is necessary to protect or enforce the

plaintiffs' lien, when, by their own showing, every stick of the wood has long since been burnt up, with their knowledge and consent? Was not the lien necessarily lost when the wood itself thus ceased to exist?

It is a well settled rule of law that when a party entitled to a lien on property acts inconsistently with the preservation of his lien, he will be deemed to have waived or abandoned it. (*Spaulding* v. *Adams*, 32 Maine, 211.) We can conceive of no act more significant, one that would more conclusively show an intention to waive or abandon a lien on property, than consent that the debtor, for his own benefit and convenience, may burn it up. How can property be made available as security which has ceased to exist? In what way can a lien be enforced upon it? If this Court possessed the power of an English Parliament, it could not enforce a lien on property which had ceased to exist.

A party tortiously deprived of his lien, by a destruction of the property, would undoubtedly have a remedy against the wrongdoers. But when the property has been destroyed with his consent, he not only loses his lien, but he has no just ground of complaint. The plaintiffs, having consented to the use of the wood by the railroad company, the conclusion is inevitable that they intended to waive or abandon any supposed lien they might have upon it. And, as we have a right to infer previous motives from subsequent acts, we infer that the plaintiffs are consenting to the use of their name in this as well as the former suits, not with any expectation or design of making the wood available to them as security, but to aid the railroad company and the trustees under the old mortgages in defeating these attaching creditors, and thereby securing to the company the use of the wood, and the value of it to the trustees.

The case shows an agreement between the trustees under the old mortgages and the railroad company, entered into a short time after the wood was attached, that the latter should endeavor to defeat the attachments, and, in case of failure,

that the company might deduct the amount they should pay for other wood, and the costs and expenses incurred in such efforts, from funds that would otherwise go to the trustees. It seems not to have then occurred to any one that the city of Bath had any interest in the wood. The case further shows " that said trustees paid the counsel fees and all other costs and expenses of the plaintiffs in the replevin suits, and have advanced money for the prosecution of this suit, and are to pay the costs and expenses of the same, provided judgment be rendered against the plaintiffs; *and also all damages and costs said Miller and Tuck have recovered, or shall recover against said city of Bath, or the sureties upon the replevin bonds.*" (Facts agreed, § XI.) We thus see that the city of Bath is but a nominal party; that it has no interests in the subject matter of this suit to be protected, and no liabilities to be indemnified against; that its name is being used for the benefit and at the risk of other parties.

The argument of the able and learned counsel for the plaintiffs seems to assume that, if the city of Bath had a lien on this wood, it gave the city the right, not only to take and hold it as security, but also the right *to protect it for the use of the railroad.* We cannot concur in this view of the law. The word *lien* has never been held to create rights so extensive, and there is nothing to indicate that the Legislature used it in so extensive a sense in this case. The right to a lien on the part of a creditor is inconsistent with a right to so use the property as to consume it on the part of the debtor; and consent that the property may be so used is necessarily a waiver of the lien.

We have carefully examined all the grounds on which it is claimed that the bill can be maintained, and we think no one of them is sufficient. 1. With respect to so much of the wood as was embraced in the replevin suit against Miller, the judgment for a return of the wood must be regarded as a conclusive adjudication in favor of the validity of the attachment. 2. None of the provisions of the Acts of the Legislature referred to, nor the mortgages from the rail-

road company to. the city of Bath, gave the city a lien on this wood. 3. The consent of the plaintiffs that the railroad company might use and dispose of the wood for its own convenience and benefit, and the use of the wood by the company in pursuance of that consent, are such acts as would necessarily amount to a waiver or abandonment of it, if the city had then had a lien upon it.

*Bill dismissed, with costs for defendants.*

APPLETON, C. J., BARROWS and DANFORTH, JJ., concurred.

KENT, J., concurred in the result.