WILLIAM B. THOMPSON, Respondent, v. MICHAEL FOER-STEL, Appellant.

May 3, 1881.

1. A deed of trust which does not, in express terms nor by necessary implication, reserve to the grantor the power of disposition of the property conveyed, but which prohibits him from conveying without the express consent of the beneficiary, is not fraudulent as against creditors as being a conveyance to the use of the grantor, although, by the provisions of the deed, he is permitted to retain possession.

2. That the grantor subsequently sells the property thus conveyed, and appropriates the proceeds, is not competent, as evidence of the intention of the parties to the deed, in the absence of any evidence of the grantee's consent to such sale.

3. Where a deed of trust conveys after-acquired property, and the trustee has taken possession thereof, he can, when deprived of such possession, maintain replevin therefor.

4. Where in such a case the trustee places a watchman in charge of the property conveyed, and notifies the grantor that he has taken possession under the provisions of the deed, this is sufficient to give him possession.

5. A deed conveying such property as " shall be bought " by the grantor, or " by him substituted for the property hereby conveyed, out of the proceeds of the sale of the property conveyed," covers property otherwise substituted for the property conveyed as well as that purchased with the proceeds of a sale of property conveyed.

6. Where the deed provides that, in the absence of the trustee the sheriff of the county shall execute the trust, and, owing to the erection of a separate subdivision of the State, the *situs* of the property is thrown without the county, in the absence of the trustee, the Circuit Court having jurisdiction of the *situs* of the property may appoint a trustee upon the *ex parte* application therefor.

7. Where the judgment is clearly for the right party, an appellate court will not minutely examine into the propriety of the intermediate steps leading up to the judgment.

8. An objection that the judgment is slightly in excess of the verdict, is not ground for a reversal unless made before the trial court, where the substantial rights of the parties are not affected thereby.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Affirmed.*

E. W. PATTISON and T. H. PEABODY, for the appellant: The deed of trust under which plaintiff claims is void under the first section of the chapter on Fraudulent Conveyances. — Rev. Stats., sect. 2496. This is settled by the following Missouri cases: *Walter* v. *Wimer*, 24 Mo. 63; *Stanley* v. *Bunce*, 27 Mo. 269; *Billingsley* v. *Bunce*, 28 Mo. 547; *Cator* v. *Collins*, 2 Mo. App. 234; *The State* v. *Tasker*, 31 Mo. 445; *Lodge* v. *Samuels*, 50 Mo. 204; *Brooks* v. *Wimer*, 20 Mo. 503; *White* v. *Graves*, 68 Mo. 218. The fact that the sales were to be made only with the consent of the mortgagee does not distinguish this case from those above cited. This point is expressly decided in *Bigelow* v. *Stringer*, 40 Mo. 195, 208. Where the conveyance is absolute if " the grantor remains in possession in such a way as to be able to use the goods as his own, it is always void as against creditors, even though made on a valuable consideration." — May's Fr. Conv. 100; *City Bank* v. *Westbury*, 16 Hun, 458; *Insurance Co.* v. *Wilcoxson*, 21 Ind. 355; *Robbins* v. *Parker*, 3 Metc. 117; *Truitt* v. *Caldwell*, 3 Minn. 364; *Banning* v. *Sibley*, 3 Minn. 389; *Chophard* v. *Bayard*, 4 Minn. 533; *McCulloch* v. *Hutchinson*, 7 Watts, 434; *Hart* v. *McFarland*, 13 Pa. St. 182; *Place* v. *Langworthy*, 13 Wis. 629. The facts that the mortgageor was left in possession and was permitted to sell the goods,

may be shown for the purpose of invalidating the mortgage. — *Metzner* v. *Graham*, 57 Mo. 404 ; *The State* v. *Jacob*, 2 Mo. App. 183 ; *Weber* v. *Armstrong*, 70 Mo. 217 ; *Reed* v. *Pelletier*, 38 Mo. 176 ; *Williston* v. *Jones*, 6 Duer, 504 ; *Robbins* v. *Parker*, 3 Metc. 117 ; *Doyle* v. *Smith*, 1 Coldw. 15. The possession of the mortgage must be actual. The possession of the respondent in this case is insufficient. — *In re Blenkhorn*, 9 Ch. App. 697 ; *Congreve* v. *Evetts*, 10 Exch. 298 ; *Hope* v. *Haydey*, 5 El. & Bl. 830 ; *Gale* v. *Burnell*, 7 Ad. & E. 850. A mortgage cannot be made to cover after-acquired chattels. — *Wright* v. *Bircher*, 5 Mo. App. 322. That the after-acquired property must be clearly embraced in the deed, is held in *Tapfield* v. *Hillman*, 6 Man. & G. 245 ; *Brainerd* v. *Peck*, 34 Vt. 496. And the language of the deed alone is to determine what property passed. — *Farmers' Loan Co.* v. *Commercial Bank*, 15 Wis. 424.

W. B. THOMPSON, *pro se:* The mortgage of August 1, 1874, was upon a dairy and its property then in existence, and what would reasonably come into existence connected with and necessary for its use, and, therefore, covered and became a lien upon the cows in question, even if it were true that they were not in existence when the mortgage was executed. — Jones on Mort. (2d ed.), sect. 152 ; *Brett* v. *Carter*, 3 Cent. L. J. 286 ; *Wright* v. *Bircher*, 5 Mo. App. 323 ; *Johnson* v. *Morrow*, 60 Mo. 339 ; *Sillers* v *Lester*, 48 Miss. 613. The estoppel against Waeckerle is clear and conclusive, and lies in the act committed by him to induce the plaintiffs to believe that the cattle were the same covered by the deed of trust ; in pointing out the cattle as the same, and in acquiescing in the plaintiffs taking possession, and placing a watchman in charge ; in leaving the cattle in the possession of the plaintiff after the deed of trust of April 25, 1879, to defendant, was executed. Any estoppel against Waeckerle is an estoppel against the defendant. — *Chouteau* v. *Goddin*, 39 Mo. 250 ; *Garn-*

*hardt* v. *Finney*, 40 Mo. 449 ; *Newman* v. *Hook*, 37 Mo. 207 ; *McDermott* v. *Barnum*, 19 Mo. 204 ; *Taylor* v. *Saugrain*, 1 Mo. App. 312 ; *Bales* v. *Perry*, 51 Mo. 149 ; *Slagel* v. *Murdock*, 65 Mo. 522 ; *Pelkinton* v. *National Ins. Co.*, 55 Mo. 172 ; *Union Saving Assn.* v. *Kehlor*, 7 Mo. App. 158.

Thompson, J., delivered the opinion of the court.

The record in this case is somewhat long, but the ultimate facts upon which the rights of the parties depend are few, and, as we understand it, not in dispute. It appears that on August 1, 1874, William Waeckerle executed to Louis Phillippi a deed of trust to secure certain notes made by him to Joseph Uhrig & Co. The notes secured by the deed were for various amounts, maturing at various times between six months and five years from the date of the deed. The property embraced in the deed consisted of sixty-five cows and certain horses, wagons, and other personal effects, belonging to a dairy, which was then owned and carried on by Waeckerle, at Rock Springs, in St. Louis County. The deed not only embraced, by enumeration or general description, all the personal property then belonging to the debtor, but it undertook to convey, "also, all the cows, horses, hogs, wagons, harness, utensils, and personal effects and chattels which, during the existence of any portion of the indebtedness" mentioned in the deed, "should be bought by the said first party, or substituted by him for the personal property" conveyed by the deed, "out of the proceeds of the personal property" conveyed by the deed, "consent to said sale to be, however, obtained as hereinafter mentioned." The deed also contained a covenant that the party of the first part "will not sell, assign, or dispose of any of said property without the consent of said party of the third part, and that he will not suffer or permit said property, or any part thereof, to be levied upon, seized, or taken away under any legal process whatsoever,

and that he will not suffer or allow said property, or any part thereof, to be wasted, and will not commit any acts concerning such property, whereby the security intended hereby to be given is diminished.'' The deed also provided that upon the keeping of these covenants and the payment of the notes at maturity, the deed should be void, but that on a breach of any of them the notes should become due and payable, and that payment thereof might be enforced by the trustee taking possession of and selling the property, in a manner therein prescribed.

The deed also contained the following provisions with reference to the substitution of a trustee : '' The party of the second part, or, in case of his death, sickness, absence from the city of St. Louis, refusal, or other disability to act, the sheriff of St. Louis County for the time being, may enter any place where said property, or any part thereof, may be found, or is situated, take possession thereof, and remove the same to any place he sees fit and proper, and may proceed to sell said property,'' etc., to satisfy the debts secured by the deed.

After the making of the deed, in pursuance of the Scheme for the separation of St. Louis County from the city of St. Louis, the county of St. Louis became an independent subdivision of the State, not embracing any part of the city of St. Louis, and the boundaries of the city of St. Louis were so enlarged as to embrace Rock Springs and the site of the dairy in question. On April 23, 1879, after this separation of the city of St. Louis from St. Louis County, the Circuit Court of St. Louis City, upon a showing that Louis Phillippi, the trustee in the deed, was absent from the city of St. Louis and had become a non-resident of the city and State, and that the property was within the limits of the city of St. Louis, and no longer in the county of St. Louis, '' which fact,'' the order of the court recited, '' would render the execution of said trust impossible by the sheriff of the county of St. Louis,'' appointed William

B. Thompson, the plaintiff in this action, as trustee in the place of Phillippi.

The next day, April 24, 1879, Thompson notified Waeckerle of his appointment as trustee, and demanded payment of the debt of him, or else possession of the cows mentioned in the deed. Waeckerle pointed out to him thirty-two cows, which are the subject of this controversy, in a pasture, and Thompson took possession of them by placing a watchman over them. . On the next day, April 25th, Waeckerle executed to the defendant (Foerstel) a chattel mortgage of the cows in question, to secure a note, payable one day after date, for the sum of $575, which sum the defendant claims had been due him since the year 1877. The plaintiff advertised the cows for sale, in accordance with the terms of the deed of trust, and kept possession of them through his watchman, but without removing them from the pasture where they were, and permitting Waeckerle to milk them and to have the milk from them. On the fourteenth day after he had thus taken possession, namely, on May 7th, during a temporary absence of his watchman, the defendant (Foerstel) seized the cows and drove them off. The plaintiff then brought this action of replevin against Foerstel, and under it, the cows were delivered to him by an order of the court, and he sold them in pursuance of the deed.

. The deed of trust under which the plaintiff claims was duly recorded, and the evidence also shows that Foerstel had actual notice of it, and of the possession of the plaintiff under it, before the making by Waeckerle of the chattel mortgage to him on April 25th.

The case was tried by a jury, and resulted in a judgment for the plaintiff.

We are clear of doubt that this was the only judgment which could have been lawfully rendered; and this relieves us from the necessity of inquiring in detail into the propriety of the intermediate steps by which the judgment was

reached. We shall, however, notice the principal positions taken by the appellant.

1. It is first insisted that the deed of trust under which the plaintiff claims, was void under the first section of our statute relating to fraudulent conveyances; and several cases are appealed to in support of this construction. *Walter* v. *Wimer*, 24 Mo. 63; *Stanley* v. *Bunce*, 27 Mo. 269; *Billingsley* v. *Bunce*, 28 Mo. 547; *Cator* v. *Collins*, 2 Mo. App. 234; *The State* v. *Tasker*, 31 Mo. 445; *Lodge* v. *Samuels*, 50 Mo. 204; *Brooks* v. *Wimer*, 20 Mo. 503; *White* v. *Graves*, 68 Mo. 218. These cases hold that a deed of trust of personal property which allows the grantor not only to remain in possession of the property conveyed, but also to sell or dispose of it at pleasure, is a deed to the use of the grantor, within the meaning of the statute, and should be declared void as matter of law. And it is immaterial whether such power of disposal is expressly provided for in the language of the deed, or arises by necessary implication from its terms. *Stanley* v. *Bunce, supra.* But the mere fact that such a deed, by its terms, purports to convey property thereafter to be acquired by the grantor as accretions to the property embraced in the deed, or to replace such property as may be worn out, lost, or destroyed, does not render the deed void upon its face, because no implication arises from such language, of a power of disposition on the part of the grantor. *The State* v. *Tasker, supra.*

It is obvious that these authorities, taken in connection with the language of the deed before us, do not sustain the defendant's position. The deed not only does not reserve to Waeckerle, either by express terms or by necessary implication, a power of disposition of the property, but it expressly prohibits him from making any disposition of it without the consent of the beneficiary in the trust.

Nor is there anything in the decision of this court in the **case** of *Hepburn* v. *Mueller* (*ante*, p. 87), decided at the present

term, which furnishes support to the defendant's position. That was the case of an embarrassed debtor who attempted to convey all his property to a trustee, with a general provision that the trustee should carry on the business of the debtor for an indefinite period, the necessary effect of which would be to hold the creditors at arm's length. Here there is no suggestion that Waeckerle was insolvent, embarrassed, or indebted to anyone except Joseph Uhrig & Co., the beneficiaries in the deed, at the time when it was made. It is simply the ordinary case of A. becoming indebted to B., and conveying to a trustee for B. all the property relating to A.'s business, together with its future substitutions or accretions, to secure the debt, with the usual covenants against assignment and waste.

But, although there may be nothing in the terms of such a deed, from which the court can, as matter of law, pronounce it void, yet it may be shown as a fact, by extrinsic evidence, that it was the intention of the parties to the deed, that the grantor should continue to exercise a general power of disposition over the property; and when there is evidence tending to show such an intention, it should be left to the jury to say, as a fact, whether the deed was intended as a security for a valid subsisting indebtedness, or whether it was intended to enable the grantor to keep possession of his property and dispose of the same at his pleasure, in which latter case it will be void. *The State* v. *Jacob*, 2 Mo. App. 183. But the mere fact that the grantor in such a deed, who is left in possession under the terms of the deed, does, contrary to the terms of the deed, sell the property thereby conveyed, and appropriate the proceeds to his own use, has no tendency to show that such was the intention of the parties to the deed; and such evidence, if objected to for this reason, is properly excluded. *Metzner* v. *Graham*, 57 Mo. 404, 408, 409. A party cannot thus take advantage of his own wrong. Neither can a privy of a party then take advantage of such party's wrong. If

Waeckerle were a party to this suit, he could not urge against the beneficiaries of this deed that he had violated the terms of the deed by selling the property embraced in it and pocketing the proceeds ; neither can Foerstel do this, who claims the property by a deed from Waeckerle. In this case there was no evidence from which the jury would have been authorized to infer that Joseph Uhrig & Co., or their successors, the Uhrig Brewing Co., have ever consented to any act of Waeckerle in selling the property embraced in the deed and appropriating the proceeds to his own use. There was, therefore, no error committed by the court in refusing to submit to the jury the question whether or not the deed was fraudulent in fact, as intended by the parties to it, to operate as a deed to the use of the grantor.

2. The defendant takes the position that a mortgage of after-acquired chattels being void at law, and this being an action at law, the deed of trust, in so far as it undertakes to cover chattels which the grantor should thereafter acquire, is to be treated as void in this proceeding. In support of this position, he relies on the language of Judge Bakewell in *Wright* v. *Bircher*, 5 Mo. App. 322, to the effect that a mortgage of after-acquired chattels is void at law. The remark was not necessary to the decision of the case, for the case before the court was neither, strictly speaking, a proceeding at law nor a proceeding in equity, but an agreed case where the court was called upon to decide whether, as between a prior and subsequent encumbrancer, a mortgage to a prior encumbrancer of chattels thereafter to be acquired, would hold ; and the court held that it would. The present case, though in the form, not of an agreed case, but of an action of replevin, presents exactly the same question ; and we might dispose of it on the authority of that case, without going further. But we have regarded it as a serious question in the case, and have endeavored to make a careful examination of the adjudged law on the subject. The statement of Judge Bakewell in that case, that a mort-

gage of after-acquired chattels, though good in equity, is void at law, is perfectly accurate as an historical statement, and with reference to those jurisdictions where separate courts of chancery are maintained. With reference to mortgages and other assignments of things not *in esse*, the familiar maxim of the courts of law was, *nemo .dat quod non habet*. But as personal property accumulated in consequence of increased manufacture and trade and the advance of civilization, it was found that the power to assign as security for debt the fixtures or other articles of personalty connected with any trade or manufacture, was highly convenient and beneficial to commerce. It was also found that mortgages of such property could not be made effectual unless they could be made to embrace property which should come in by way of additions, or changes to replace waste, or to make necessary substitutions. The courts of equity, therefore, discovered the propriety of enforcing such mortgages, as agreements to assign the after-acquired chattels, as fast as they should come into the possession of the mortgageor. And, as such courts consider that as having been done which ought to have been done, on an application to foreclose such a mortgage, they treated the assignment as having been made; and they held, as the only rational rule which could be applied in such cases, that the several items of future property embraced in the deed, as fast as they came into existence, instantly attached to and became covered by the deed, and fed the estoppel thereby created. *Galveston R. Co.* v. *Cowdrey*, 11 Wall. 459, 481. In other words, it came to be a rule that such mortgages were just as effectual in equity as mortgages of things *in præsenti*.

Now, when we say that a certain contract, though void at law, is good in equity, what do we mean, where, as in Missouri, two remedial systems, known respectively as law and equity, are blended together as one system, administered in one court, and in but one form of action? I apprehend that we mean that if a contract would be upheld under

either of those remedial systems, it will be upheld by the law of Missouri in a proper proceeding. It is inadmissible that we have two kinds of law, under one of which a given contract is good, and under the other, bad. If it were told to a merchant on the exchange that this was so, he would say that it was nonsense; and certainly such a statement seems against common reason. It is absurd to say that a contract, in its application to a given subject-matter, can be both good and bad; and when we say that a certain contract is good in equity, and that equity is a part of the remedial system of Missouri, we say that it is good under the law of Missouri, provided the proper processes are resorted to to enforce it.

And the question is, whether the statutory action of replevin is such a process. That a trustee may maintain such an action for trust-property which was in existence at the time it was granted to him, is not open to controversy. *Baker* v. *Washington*, 5 Stew. & P. 142; *Pearce* v. *Twitchell*, 41 Miss. 344; Rev. Stats., sect. 3463; *Wright* v. *Tinsley*, 30 Mo. 389; *Phillips* v. *Ward*, 51 Mo. 295. It is true that this proceeds upon the idea that he is the holder of the legal title, and that the right which he asserts is not an equitable, but a legal right. But a trustee who has succeeded to the right of possession of things not *in esse* at the time they were granted to him has the same right of action, unless the statutory action of replevin is a proceeding at law in such a strict sense as wholly to exclude the consideration of equitable rights. A case in Ohio which will be hereafter examined, goes to show that this is not the nature of such an action. *Chapman* v. *Weimer*, 4 Ohio St. 481. Nor is that case alone in so holding. In Maine, it is said that " it is a well-established and familiar rule of law, that a return of property replevied will not be ordered when in equity it ought not to be returned, though the defendant has judgment in his favor in the suit. In determining whether or not there should be a return, the power

of the court, and the extent of the inquiry is the same in an action of replevin as in a suit in equity." *City of Bath v. Miller*, 53 Me. 308, 316.

In those jurisdictions where the two systems of remedial justice, called law and equity, are blended in a code and administered in a single court of original jurisdiction, as with us, the rule of the courts of law is so far recognized that it is conceded that a mortgage of after-acquired chattels will not, before the mortgagee or trustee has taken possession, operate to prevent such chattels from being levied on under an execution at law. But, even in such cases, the validity of such a mortgage is so far recognized by the courts that it is held that a levying creditor subjects, under his execution, not a full property right in the chattel, but only the mortgagee's interest therein, namely, an equity of redemption, and hence a purchaser at an execution sale would not be entitled to possession of the property until he had complied with the terms of the mortgage. *Coe v. McBrown*, 22 Ind. 252. And if such after-acquired property is levied upon under an execution before the trustee takes possession, and the trustee replevies it, and, as in this case, it is delivered to him, while the defendant will, under the rule of law above stated, be entitled to judgment, yet he will be entitled to no more than nominal damages, and not to the value of the property thus taken from him under the writ of replevin, under a statute giving in such cases such damages as are " right and proper." *Coe v. Peacock*, 14 Ohio St. 187. And this, and nothing more than this, would have been the position of the defendant in this case, if his deed had been made two days earlier, so as to antedate the taking of possession by the plaintiff.

Of American courts, so far as I know, the Supreme Judicial Court of Massachusetts alone has taken the extreme view that mortgages of things not *in esse* will not be upheld in equity. We may even adopt the view taken by that court, and yet, under the facts of this case, the result will

be in favor of the plaintiff. In the leading case in that State, which was a case in equity, where this subject is discussed, it is conceded that where the trustee in such a mortgage, in pursuance of the license therein contained, has taken possession of the after-acquired chattels, he thereby acquires a valid possessory lien, which will be upheld in a proper proceeding. " The result to which we have come upon the present petition," said Dewey, J., " may be stated in the following propositions : The petitioner cannot hold the property in controversy as mortgaged property, because it was not in existence; and therefore not capable of being conveyed in the mortgage at the time when the mortgage was made. The instrument could not operate to pass the property as a pledge, because the custody of the same was not taken and retained by the pledgee. The property could not be held as charged with a lien, because a lien cannot be created by an executory agreement, without being accompanied by possession or delivery of the property. A stipulation that future-acquired property shall be holden as security for some present engagement, is an executory agreement of such a character that the creditor with whom it was made, may, under it, take the property into his possession, when it comes into existence and is the subject of transfer by his debtor, and hold it for his security ; and whenever he does take it into his possession, before any attachment has been made of the same, or any alienation thereof, such creditor, under his executory agreement, may hold the same ; but until such an act be done by him he has no title to the same ; and that, such an act being done, and the possession thus acquired, the executory agreement of the debtor authorizing it, it will then become holden by virtue of a valid lien or pledge. The executory agreement of the owner, in such a case is a continuing agreement, so that, when the debtor does take possession under it, he acts lawfully, under the agreement of one then having the disposing

power and thus makes the lien good." *Moody* v. *Wright*, 13 Metc. 17, 32.

The same doctrine was applied by the Supreme Court of Ohio in a case at law. The debtor mortgaged a stock of goods to secure a debt, together with its future increase and additions, and providing that the mortgagee might take possession of such stock of goods, and also of all the goods that the debtor might thereafter have, whenever he should see proper. The mortgagee took possession, with the consent of the mortgageor, and on making an inventory it was found that a portion of the goods then in stock had been bought on credit the day previous. On the second day after the mortgagee had thus taken possession, the mortgageor confessed judgment in favor of such third parties for the value of the goods, and a constable thereupon levied an execution upon them, and the mortgagee replevied them 'from the constable. It was held that judgment in this action of replevin was rightfully given for the mortgagee. *Chapman* v. *Weimer*, 4 Ohio St. 481. That case is substantially the case before us.

In the hypothetical case stated by Dewey, J., *supra*, the mortgagee takes possession in pursuance of the power contained in the mortgage. In the actual case in Ohio, the mortgageor delivered possession to the mortgagee. In the case at bar, when the trustee demanded of the grantor in the deed of trust to know where the cows were which were embraced in the deed, the grantor pointed out some cows in a pasture, and the trustee took possession of them by placing a watchman over them, and notifying the grantor in the deed that he took possession of them for the purpose of selling them, in pursuance of the terms of the deed. We see no distinction in principle between cases where the mortgagee or trustee takes possession *in invitum* in pursuance of the license contained in the deed, and cases where the mortgageor or grantor voluntarily puts him in possession. In the former case as well as in the latter, if the property of

which possession was taken was clearly intended to be passed by the deed, the mortgagee or trustee is clearly in possession under a valid contract which entitled him to claim possession.

3. But the defendant contends that the principle here asserted applies only to cases in which the mortgagee or trustee takes *actual* possession, and not to the kind of possession which the trustee took in this case. And he cites several English cases in support of this view, which we shall not consider for two reasons : First, because, though ordinarily entitled to great weight, they are not binding upon us as authority ; and, secondly, because we could not, without ignoring the settled practice of levying officers in this State, hold otherwise than that the kind of possession which the plaintiff took in this case was an actual possession. He took possession of them in precisely the manner in which sheriffs and constables, in levying writs of *fieri facias* or attachment, take possession, by placing a watchman over them and notifying the owner that he had taken possession for the purpose of selling them, after due advertisement in accordance with the terms of the deed. The fact that he, out of humane considerations and at the request of the defendant, allowed Waeckerle to have the milk of the cows, did not render his possession any the less actual or adverse. It was a license in the nature of a mere gratuity, which he could have revoked at pleasure. As the deed was given to the defendant after the plaintiff had thus taken possession, the knowledge of Waeckerle of the possession was imputable to the defendant. But in addition to this the defendant had actual knowledge of the fact that the trustee was in possession, and he appears to have waited for twelve days after the making of the deed to him, for an opportunity to get possession of the cows, which he seized upon during an unguarded hour, when the watchman of the plaintiff had left his charge. There is no difficulty whatever on this point.

4. The question usual in such controversies was also made, that the cows taken possession of by the trustee were not the cows embraced or intended to be embraced in the deed of trust. The deed embraced sixty-five cows named in the deed, and " also all the cows * * * which, during the existence of any portion of the indebtedness hereinafter mentioned, shall be bought by the said party of the first part, or substituted by him for the personal property herein conveyed, out of the proceeds of the sale of the property herein conveyed, consent to such sale to be, however, obtained as hereinafter mentioned.'' The defendant contends that the deed is to be construed strictly, and that in order to recover, the plaintiff must show that the cows which he replevied were cows which Waeckerle had bought with the proceeds of previous sales of cows mentioned in the deed. There are two answers to this contention : The first is, that the question was put to the jury, whether the cows replevied were the cows mentioned in the deed, and, in finding for the plaintiff, they must have found that they were. The second is, that the obvious meaning of the above language in the deed is that the conveyance should embrace all cows which, in case the party of the second part should consent to a sale of any of the cows actually covered by it, should be bought with the proceeds of such sale, *or* any cows which should be otherwise substituted by Waeckerle for cows conveyed in the deed, to supply losses or waste.

5. The contention of the defendant, that the Circuit Court of the city of St. Louis had no power, on the application of the holder of the notes secured by the deed of trust, to appoint Thompson as trustee in the place of Phillippi, presents a more serious question. The deed, it will be remembered, provided that in case of Phillippi's death, sickness, absence from the city of St. Louis, refusal, or other disability to act, the trust should be executed by the sheriff of St. Louis County for the time being. The intention of the parties to the deed undoubtedly was that in case

of the failure of Phillippi, from any cause, to execute the trust, when requested by the beneficiary to do so, the trust should be executed by a responsible bonded officer, authorized by statute so to act, who would have jurisdiction in the premises. The happening of an event which would place the doing of the act outside the official jurisdiction of the sheriff of St. Louis County, was not foreseen or contemplated. When the Uhrig Brewing Company, therefore, desired to have the trust enforced for their benefit, they found that neither of the persons named in the deed could act. It was therefore necessary to apply to the Circuit Court under the statute to appoint one who could act. The statute (Acts 1872, p. 67; Rev. Stats., sect. 3930) empowered the court to appoint the "sheriff or other suitable person of the county," which in this case would mean the city. The court appointed the plaintiff. There is no suggestion that he is not a suitable person, and if there were, the action of the court in appointing him would probably be conclusive on that point. Nor is there any merit in the contention that he was appointed on an *ex parte* application without notice to Waeckerle, or an opportunity to him to be heard. The statute does not provide for notice to the grantor, or contemplate an adversary proceeding. It permits the application to be made by an affidavit, and requires the court to appoint a new trustee "if it shall be satisfied that the facts stated in the affidavit are true." The trustee having been appointed in conformity with the statute, it would be usurpation in us to declare that he had no title to act.

6. Finally, the point is made that the judgment is erroneous in that it covers too much property. Looking into the record, we find that the property embraced in the petition, affidavit, and order of delivery, was thirty-two milch cows, one malt-wagon, and two horses. The sheriff executed the order of delivery by delivering this property to the plaintiff, except one cow, which could not be found or shown to him. The jury found that the plaintiff was enti-

tled to the possession *of the cows mentioned in the petition*, and assessed his damages at one cent, and said nothing in their verdict about the horses and wagon. The judgment which the court rendered on the verdict was " that the plaintiff retain possession of the personal property delivered to him by the sheriff at the commencement of this action," etc. It is thus perceived that the judgment is in excess of the verdict, by two horses and one wagon ; but as the attention of the court below was not called to this fact, either on a motion to arrest the judgment, or for a new trial, we shall not reverse the judgment for this reason. Besides, the error had no substantial effect upon the rights of the parties. There was no contest about the plaintiff's right to retain possession of the horses and wagon. They were not embraced in the defendant's mortgage ; the whole contest was about the cows ; and it is this fact, no doubt, that accounts for the irregularity of the verdict.

The judgment is affirmed. All the judges concur.