BULL *et al.*, Respondents, v. SIGERSON, Appellant.

1. Where one acting as a factor receives merchandise for shipment to a particular consignee, and makes advances upon the same, and the merchandise, being refused by the consignee by reason of its being in a damaged condition, is sold for less than the sum advanced; *held,* that the factor is entitled to have his advances made good.

*Appeal from St. Louis Court of Common Pleas.*

*Krum & Harding*, for appellant.
*F. A. Dick* and *Glover & Richardson*, for respondents.

RYLAND, Judge, delivered the opinion of the court.

The plaintiffs brought their action against John Sigerson, counting first on a note executed by Sigerson to them for $618 32, dated the 4th day of May, 1852, and due in ninety days after date.

Secondly, the plaintiffs say that defendant owes them $1476 87 on account of reclamation for damages in a lot of 300 barrels of pickled shoulders, sold by the plaintiffs for said defendant to L. M. Wilson, of Mobile, Alabama, for which the said plaintiffs paid the said defendant, but said Wilson refused to receive and pay for the same, for the reason that the same was damaged; the particulars of which and also the credits

thereon will appear by an account hereto annexed, and made part of this petition. The plaintiffs also say that said sum of $1476 87 was found due to them from the said defendant by arbitrators, Henry Ames and James E. Woodruff, chosen by the plaintiffs and defendant, to whom the matters in controversy were submitted, under an agreement signed by said plaintiffs and defendant, a copy of which, marked "A," is annexed to the petition, and made a part thereof, the original not being in their power to produce ; and they also annex the award of the arbitrators, marked "B." They ask judgment for the amount against defendant, with interest.

The defendant answers, admitting the note, but makes some unavailing excuse for non-payment, and also sets up a set-off. To this the plaintiffs reply. The court finds the amount of the debt due to plaintiffs on the note. This first count may be considered settled and out of the present controversy, as the defendant makes no objection to any thing done by the court below in regard to it. The defendant's answer denies the second cause of action, putting in issue all the material allegations of the plaintiffs' second count.

There was a trial by the court without a jury, and the court found the facts as follows : " That the amount of interest due on the note mentioned in the petition is $119 02, and that the whole sum due on said note, including interest, is $737 34. There is no proof that said note was ever negotiated, or that any costs of protest were ever incurred or paid by the plaintiffs. The court doth further find that the plaintiffs sold 300 barrels of pickled shoulders, as defendant's factors, for the defendant, to L. M. Wilson, of Mobile, Alabama, and advanced to the defendant, on the shipment of the same in March, 1851, the sum of $2850. Said purchase and shipment were made to fill an order therefor from said Wilson. On the arrival of said shoulders, said Wilson refused to receive the same on the ground that they were damaged, and the same were turned over by said Wilson to Shultze & Haddon, of New Orleans, the factors of the plaintiffs in said city. On receiving information of the re-

fusal of Wilson to accept the said shoulders, and the ground of said refusal, the plaintiffs communicated the same to the defendant, and asked what should be done with said shoulders. The defendant suggested that they should be bedded in dry salt, if the pickle did not restore them. Two hundred and eighty barrels of said shoulders were subsequently sold by Shultze & Haddon, at their full market value, in New Orleans, it being the best disposition that could be made of them for the interest of all concerned. The nett proceeds of said sales were $1445 88, which sum was received by the plaintiffs. The remaining twenty barrels were not accounted for by the plaintiffs or their factors. Said shoulders were agreed to be sold to said Wilson at the rate of $9 50 per barrel. Shultze & Haddon, of New Orleans, charged commission on their sales. The shoulders arrived in Mobile and New Orleans in a damaged condition. There is no proof of the item in plaintiffs' account for commissions or drayage or insurance, or of charges at Mobile; nor is there any proof of the usual or customary rate of commission on sales or advances. The court finds that the plaintiffs did advance to the defendant, on said shipment, $2850 on 13th March, 1855; that the nett proceeds of 280 barrels, sold as aforesaid by Shultze & Haddon, were $1445 80, which nett proceeds were received by plaintiffs on the 13th August, 1851; that the value of twenty barrels, not accounted for was $190 ; that the plaintiffs sustained a loss on said transaction; that the amount of said loss is $1214 12. The court doth further find that the exhibit, marked ' A,' was duly executed by the parties, which is as follows :

" ' On the 17th January, 1851, I entered into an agreement with Messrs. Bull, Hart & Shultze, of St. Louis, by which they agreed to make advances on a lot of bulk meat, the property of Wallace Sigerson, as said meat should arrive from Illinois river. After the arrival of said property, and while in my charge, viz., about the month of March, Mr. Bull called my attention to an order which he stated they had received from one of their correspondents, directing them to purchase 300 barrels of shoul-

ders in strong pickle. I informed him I had the shoulders, and, if he desired to do so, could furnish the barrels, and pack them as desired ; and further stated I would furnish the shoulders at 4⅜ per 100 lbs., being $8 75 per barrel ; barrels at fifty cents ; cost of packing and pickle, twenty-five cents ; total cost per barrel, $9 50 ; to which Mr. Bull replied that if that was as low as any one would offer to do it, he would give me the preference, probably. On the next day, they informed me they would accept my offer, and directed me to put the property in readiness for shipping, which I accordingly did ; and when so done, delivered the property to them as it was called for. When the property was so delivered, I rendered them a bill for the same, charging them in account with 300 barrels at the price above stated, and credited them in account with a commission of 2½ per cent., the same as if sold and delivered to any other parties. The said amount was passed to my credit in account with them. Some time after the property was shipped, I was informed by Messrs. Bull, Hart & Shultze, that, on their arrival in New Orleans, they proved to be damaged, and asked me what I would recommend in reference to them. I informed them I thought it might be some advantage to let the pickle off, and bed them down in salt, or something about to this effect. At a later period, I was informed by these gentlemen, that, inasmuch as their correspondents had refused to receive the property, and they had returned him his money for the costs of the purchase, they would charge them back to me, or at least the loss which had been sustained. I sold the property to Bull, Hart & Shultze as I would have done to any other purchaser. I credited them with the commissions on the sale as if sold to other parties. I considered it a cash transaction, without any guarantee. I would not have packed meat in this way had I been consulted, and did recommend a different way of packing, but was informed that they could not depart from their instructions, which was to have the meat packed into barrels and the barrels filled up with strong pickle. I claim that I am not in any way liable to Bull, Hart & Shultze on account

of the meat spoiling after it was packed, it having been packed as directed by them, and in conformity to the order they had received, and also that the meat was sound and of good quality. Bull, Hart & Shultze claim that they were acting as commission merchants or factors, and that they could not themselves be expected to stand a loss growing out of the transaction. In order, therefore, that the difference of opinion between us be settled, we have mutually agreed to refer the matter of liability to two men, one to be chosen by each, and in case of their disagreement, they to choose a third, whose decision shall be binding ; and in order to carry out the aforesaid agreement, John Sigerson has chosen Henry Ames to act as arbitrator for him, and Bull, Hart & Shultze have chosen James E. Woodruff to act as arbitrator for them, and it is understood that the decision of the parties, together with such third party as they may select, in case they can not agree, shall be binding and final ; it is also understood that the above statement embraces all the points at difference to be determined ; all of which points, however, are susceptible of proof. [Signed] John Sigerson.

" ' We agree to the reference above, but do not admit the statement showing cost of putting up as to items, but do admit the aggregate cost. We except to the expression ' recommended,' and state that the first objections urged by Mr. Sigerson to the payment of any reclamation was after our account was rendered. Mr. Sigerson may have said that a better way than pickling could be adopted, but we have no recollection of it. [Signed] Bull, Hart & Shultze.'

" ' And that thereafter the parties and the arbitrators named therein—Henry Ames and James E. Woodruff—met, and that at said meeting the matters submitted to said arbitrators, as stated in said exhibit ' B,' were heard upon proofs produced by the parties ; that thereafter said arbitrators made the award offered in evidence, which is as follows :

" ' The undersigned, arbitrators, appointed by Bull, Hart & Shultze, and John Sigerson, to decide upon a claim made by

the former upon the latter, amounting to $1556 26, growing out of a sale of 300 barrels pickled shoulders, made by Sigerson to a Mr. L. M. Wilson, of Mobile, through the agency of Bull, Hart & Shultze, as the recipients of the order from Wilson, and acting at the same time as the agents for Mr. Sigerson in the sale by him. The 300 barrels of shoulders were shipped to Wilson's agent at New Orleans, and, on arrival and inspection, proving sour, Wilson refused to receive or pay, and the property, at a later period, was sold at a loss, to the amount above stated. We mutually decide that Sigerson is to bear the loss, and make good to Bull, H. & S. the difference between the original invoice, as rendered by Sigerson, and the nett proceeds of said property, when sold, with all expenses attending same from time of delivery by Sigerson until finally sold; and that Bull, H. & S. shall credit back to Sigerson the commission they charged him on the original invoice, it appearing that but one commission of $2\frac{1}{2}$ per cent. was to be charged Sigerson, whether his property was to be sold in St. Louis or shipped to and sold in another market. Bull, H. & S. having accounted to Sigerson for but 280 barrels of the shoulders, they shall allow Sigerson on the remaining twenty barrels invoice price—$9 50—less $2\frac{1}{2}$ per cent. commission. We determine Sigerson's liability, in this case, on three grounds, viz., to-wit: It is in evidence that Sigerson saw the letter to Bull, H. & S., from Wilson, ordering the shoulders, and admits it read as follows: 'I mean 100 barrels hams and 300 bbls. shoulders in pickle; be sure that the pickle is of the best kind.' Upon this order, Sigerson agreed to furnish the shoulders at a stipulated price per barrel. It appears Sigerson contends this order required him to put up the shoulders in pickle only, and to put no salt in the barrels; and he admits he would not risk putting up shoulders in this manner for himself, and brings proof by men in his employ and others, that they believe shoulders so put up in pickle, without salt, would not remain sweet or keep thirty days, particularly if going into a warm climate. We see nothing in the language of this order to justify Sigerson in put-

ting up the shoulders in any other than the customary way, which is admitted and proven to be by packing in strong pickle, with good supply of salt; and as an experienced packer, in the absence of any instructions or orders to put up these shoulders in pickle, without salt, other than his construction of the language in the order itself, he was bound, for his own protection, to get his views endorsed by B., H. & S.' before he would put up an article in a manner contrary to his usual custom and against his judgment, and with great doubts as to the shoulders keeping sound. Nor do we see any thing ambiguous in the order of Wilson ordering 300 barrels shoulders in pickle, and requesting his friends to be sure the pickle is of the best kind. We see nothing in the language to justify a deviation from the accustomed manner of packing joints in pickle, viz., to use sufficient salt to feed the pickle and preserve the meat. Secondly, it is in evidence that Bull, H. & S., at the time of the contract with Sigerson, were acting as Sigerson's factor, and were entitled to a commission on these very shoulders, whenever sold; that they notified Sigerson that they could charge no commission to Wilson, and that, had they not filled the order with Sigerson's meat, they would not have filled it at all—their object being only to effect sale for Sigerson. He, Sigerson, admits he charged the invoice of the 300 barrels shoulders to B., H. & S., and credited them with a commission. B., H. & S., acting as the factors for Sigerson, in good faith, can not be accountable to Sigerson, their principal, unless negligence, inattention or bad faith be proven, or that they caused the loss to Sigerson by some bad management, or not having obeyed Sigerson's orders or instructions, and none of these charges are shown. Thirdly, it is in evidence that as soon as it was known that the shoulders were found sour on arrival in New Orleans, Sigerson was notified of the fact, and it was then his duty to have protested against Bull, H. & S. releasing Wilson, or expecting him, Sigerson, to be liable. On the contrary, when informed by B., H. & S. that the shoulders were sour, and asked what should be done, he, Sigerson, gave such reply or

recommendations or orders as to give B., H. & S. and Tompkins, in their employ, fully to understand him as from that time exercising ownership in the meat in question. [Signed] Henry Ames, James E. Woodruff. St. Louis, June 18, 1852.' Interest on loss, from date of award, is $243."

Upon this finding of the facts, the court pronounced the law in favor of plaintiffs thereon, and rendered judgment for the amount of the note, and the amount of the reclamations, being the sum of $2174 28. The defendant moved for a review of the finding, and saved so much of the evidence as was necessary therefor. The court overruled said motion, and defendant brings the case here by appeal.

The principal grounds on which a review of the finding of the court was asked are, first, that the court found that the plaintiffs were, in this transaction, the factors of the defendant, and that they acted in that capacity in selling the pork in question to L. M. Wilson, and advanced to defendant $2850 on account of said pork ; second, that the court found that the pork in question arrived in Mobile and New Orleans in a damaged condition, by the fault or neglect of the defendant, and that the plaintiffs' damage or loss, by reason thereof, is $1214 12.

The plaintiffs read in evidence the exhibit, marked " A," also the award, marked " B." The plaintiffs produced a witness, Mr. Tompkins, who proved the execution of the agreement made between the parties, dated 17th January, 1851, referred to in exhibit " A." This agreement stipulates that the plaintiffs agree to advance to the said party of the second part (Sigerson) on a lot of salted pork, expected to arrive, specifying a large amount, at certain rates mentioned ; the second party is to receive the meat on his arrival from the Illinois river, and to incur and defray all expenses in and about said meat, and to smoke and cure it in a proper manner, and to pack and deliver it to the plaintiffs, all in first rate order. The plaintiffs were authorized to sell the meat at St. Louis, or might ship part or the whole of said meat to New Orleans or any other market, and when sold, there was to be a settlement between

the parties, as stipulated, the plaintiffs being entitled to charge one per cent. on the current rate of exchange on bills on New Orleans, negotiable at ninety days' date on all demands made by them, and on the gross amount of sales shall be allowed the usual commission for selling—say $2\frac{1}{2}$ per cent., and all expenses actually incurred about the same ; provided, however, that there shall be but one charge made for selling said meat ; and after all these charges are made and allowed and paid, then whatever may remain over shall be paid to the party of the second part. The witness, Tompkins, stated that the plaintiffs received an order from Wilson for 300 barrels pickled shoulders, which order was read to the defendant.' The order was : "If you have the thin mess pork packed, I think you might add to the order 100 barrels, put up of the hams, and 200 or 300 shoulders in pickle ; I mean 100 barrels hams and 300 barrels shoulders in pickle ; be sure that the pickle is of the best kind." The plaintiffs obtained from the defendant, and shipped under this order the shoulders mentioned in the petition to Shultze & Haddon, of New Orleans, to be forwarded to Wilson at Mobile. The defendant knew the shoulders were obtained for Wilson under that order, and was told that Wilson refused them on the ground that they were damaged. The defendant suggested that they should be packed down in dry salt and that they would be restored. I understood from that conversation that defendant was exercising ownership, though I can not give his words. The plaintiffs claimed the difference of the defendant between what the shoulders sold for in New Orleans and defendant's invoice and costs. The plaintiffs advanced to defendant generally on property of defendant. After receiving notice of the damage, the plaintiffs notified the defendant. He expressed surprise, and then went on to direct what should be done with the shoulders. In a letter written by the plaintiffs to Shultze & Haddon in New Orleans, were these words, which the witness said contains the direction given by the defendant about the shoulders, as follows : "If the pickle does not seem to restore the shoulders, have them bedded in dry salt, free from the fly,

and hold till further advised." The testimony is voluminous. I have not thought proper to insert it all. There was testimony tending to show the amount advanced for the 300 barrels shoulders, and tending to show their damaged condition in New Orleans or Mobile. The defendant proved by a witness that the sale of the shoulders in question was made to the plaintiffs; that one of the plaintiffs was present during the time the shoulders were packed, and a bill was rendered to plaintiffs for them.

The main question here is, whether the 300 barrels of shoulders were sold by Sigerson to the plaintiffs, or whether the plaintiffs, as Sigerson's factors, sold them for him to Wilson. The liability of Sigerson depended on this question, and these parties knew it; and, for the purpose of settling this matter, they did mutually submit it to arbitrators, and these arbitrators made their award, deciding that Sigerson was liable. It is always competent for parties to choose their own judges to dec de their matters of difference, and the law encourages and promotes this friendly method of adjudication. The award was proper evidence, and we conceive it concluded the defendant upon the only ground of defence to the action. These gentlemen submit the question, upon all the facts, to two experienced arbitrators; upon these matters they were to say, if Mr. Sigerson was liable to the plaintiffs or not. They make their award— they find him liable; and from the facts in proof in the case, the court finds against the defendant. There was some trouble in finding out the cause of action in the second count; but we suppose that enough appears to put the defendant properly on his defence thereto. We can not say that the court erred in overruling the defendant's motion for a review. Whether this court would have found from the testimony that the plaintiffs were factors or purchasers themselves, is not the question before us. This question was submitted to other judges of the parties' own choosing, and their decision is binding.

There is no error in admitting testimony, nor in rejecting, as appears to us by the court below. This whole matter grows out of the improper pickling of these shoulders. There should have

been " salt ·o feed the brine," in the language of the arbitrators. It was this defect in originally pickling these shoulders improperly that made the defendant liable in the minds of his arbitrators, and the obedience to instructions did not, in their estimation, justify him. These instructions did not hinder the salt from being put in to keep the brine good. In looking over the whole case, the court concludes that there appears no sufficient reason to reverse the judgment below. It is therefore affirmed; the other judges concurring.