Reed v. Pelletier.

REED *et al.*, Defendants in Error, v. PELLETIER *et al.*, Plaintiffs in Error.

1. A. conveyed a stock of goods in trust to secure certain notes in favor of B. In the deed it was stipulated that the property conveyed should remain in the possession of A. until the maturity of the notes secured, when, if they were not paid, the trustee might take possession and sell. A. remained in possession and continued to sell in the usual course of business. C., a creditor of A., sued out an attachment against A. on the ground that he had fraudulently conveyed and assigned his property so as to hinder and delay his creditors. *Held*, that the declarations of B., (he not being a party to the suit and being a competent witness for either party and not shown to have conspired with A.,) made in the absence of A., to the effect that A. had the right to sell the goods embraced in the deed of trust in the ordinary course of business, were inadmissible in evidence.
2. The constructive fraud against creditors, which exists where it is understood between the grantor in a deed of trust conveying a stock of goods and the *cestui que trust* that the former is to remain in possession and continue to sell in the ordinary course of business, is sufficient to support an attachment under the seventh clause of the first section of the attachment act.

### Error to St. Louis Circuit Court.

This was a suit by attachment against Thomas A. Pelletier and John D. Pelletier. The affidavit charged that the defendants "had fraudulently conveyed and assigned their property and effects so as to hinder and delay their creditors. There was a plea in abatement denying the truth of the affidavit. Upon the trial of the issue raised by this plea, the following facts, among others, appeared: Defendants, being indebted to the firm of Hugh Boyle & Co. in the sum of $1,737, executed a deed of trust conveying their stock in trade to a trustee to secure said indebtedness evidenced by notes therein described. This deed contained the following stipulation: "It being understood that the property may remain in the possession of the said parties of the first part until default of payment as aforesaid," &c. The deed was duly acknowledged and recorded. The notes were not paid and the trustee took possession and advertised the property

12—VOL. XXVIII.

for sale. Before a sale the levy of the present attachment was made. Evidence was introduced by plaintiffs to show that at the time of the execution of the deed of trust the defendants were embarrassed pecuniarily, and that the stock of goods was worth more than the debt secured by the deed of trust amounted to. A witness called by plaintiffs was permitted to state, against the objections of the defendants, that Boyle had said to him in conversation that he had given the defendants permission to hold possession of the goods and settle with their creditors, and that they had from him a right or permission to continue selling the goods in the store in the usual course of business; and that he (Boyle) supposed the defendants had stock on hand worth some six or seven thousand dollars. Boyle, called as a witness for defendants, de nied having made these statements.

The court, at the instance of the plaintiffs, gave the following instructions : " 1. If the jury believe from the evidence that the deed of trust of defendants to Boyle & Co. was made with intent on the part of the defendants to hinder or delay the other creditors in the collection of their debts, then they will find for the plaintiffs. 2. If the jury believe from the evidence that there was an agreement between defendants and Boyle & Co., at the time of executing the deed of trust and afterwards, that defendants should continue in the possession of the goods and property therein conveyed, with the privilege to sell and dispose of the same in the usual course of business or trade for their own account and benefit, and that said defendants did remain in possession of the same from the date of the deed until after attachments were levied upon them, and continued from time to time to sell and dispose of portions of such property for their own use, then the jury will find the issues for the plaintiffs. 3. If the jury believe from the evidence that the deed of trust of defendants to Boyle & Co. was made for the purpose of covering up their property therein named and to enable them to obtain settlements from their other creditors

on terms of discount from the sums really due, then they will find for plaintiffs.

The following instructions asked by defendants were refused: "1. The defendants had a lawful right to make the deed of trust given in evidence to secure the debt named therein to Boyle & Co.; and if the jury find from the evidence that said deed was made to secure a *bona fide* debt due to Boyle & Co. by defendants, then the said deed is not any evidence of fraud on the part of the defendants as against their creditors. 2. The possession of the store and goods of defendants had and held by them after the execution of said deed of trust, and the sale of articles of goods from time to time by the defendants in the ordinary course of business, is no evidence of fraud in the conveyance or assignment of these goods as charged in the affidavit of the plaintiffs, if the jury find from the evidence that said deed was made fairly to secure an honest debt, and that defendants acted honestly and fairly in making said deed and in making the said sales of their goods after the execution of said deed. 3. The question of fraud in this case is one of intent, and if the jury find from the evidence that the deed was fairly made to secure a *bona fide* debt, and that there was no intent to defraud on the part of the defendants or Boyle & Co., and that the sales of the goods afterwards were honestly made in the regular course of their business, without any agreement on the part of Boyle & Co., outside the deed of trust, that they should have the right to sell the goods, then the fact that such sales were made furnishes no evidence of fraud in the absence of further proof that the proceeds of such sales were fraudulently disposed of so as to hinder, delay and defraud their creditors."

The court, at the instance of the defendants, gave the following instruction: " Fraud is not to be presumed in any case, but must be proved, and the burden of proving the fraud charged in this case is upon the plaintiffs."

The jury found for the plaintiffs.

*N. Holmes* and *B. A. Hill*, for plaintiffs in error.

I. The testimony of Gill as to conversations with Boyle was inadmissible. (15 Mo. 383.)

II. The deed of trust contained no evidence of fraud on its face. The first instruction asked should have been given. It did not come within the cases of Brooks v. Wimer, 20 Mo. 503, Zeigler v. Maddox, 26 Mo. 575, as to facts constituting fraud appearing on the face of the deed. Nor within that of Stanley v. Bunce, 27 Mo. 269. ' The fact that defendants of their own motion continued selling the goods in the usual course of business, in the absence of any proof that they fraudulently disposed of the proceeds, was of itself no evidence that the conveyance was fraudulent. The second and third instructions should have been given. (15 Mo. 420 ; 5 Tenn. 235 ; 3 M. & S. 371.) The fraud must be actual fraud to support the attachment. Constructive fraud is not sufficient. (25 Mo. 378, 416 ; 10 Mo. 50 ; 14 Mo. 597 ; 19 Mo. 29 ; 19 Mo. 656.)

*Biddlecome*, for defendants in error.

RICHARDSON, Judge, delivered the opinion of the court.

The plaintiffs sued out an attachment against the defendants on the ground that they had fraudulently conveyed or assigned their property so as to hinder, delay or defraud their creditors, and the defendants filed their plea in the nature of a plea in abatement traversing the truth of the affidavit. It appeared, on the trial of the issue made on the affidavit, that the defendants had made a deed of trust conveying their stock of goods in the store kept by them as merchant tailors for the purpose of securing an indebtedness to Hugh Boyle & Co., which contained a stipulation that the property conveyed should remain in the possession of the defendants until the notes became due, when, if they were not paid, the trustee should have the right to take possession and sell. There was evidence tending to show that the defendants remained

in possession of their store and continued to sell the stock of goods included in the deed in the usual course of business until the trustee took possession. For the purpose of applying to the deed the principle decided by this court in the cases of Brooks v. Wimer, 20 Mo. 503, Walter v. Wimer, 24 Mo. 62, and Stanley v. Bunce, 27 Mo. 269, a witness called by the plaintiffs was allowed to repeat, against the defendants' objections, a conversation he had had, in the defendants' absence, with Mr. Boyle, in which the latter had stated that the defendants had the right to sell the goods in the ordinary course of business.

When the maker of a deed of trust or mortgage that conveys a stock of goods continues in possession and sells in the usual course of business, with the knowledge of the *cestui que trust*, very slight evidence ought to be required to prove that his dealing in that manner with the property was pursuant to a right secured contemporaneously with the execution of the instrument, which would stamp the transaction with constructive fraud, at least, as effectually as if the provision had been incorporated into the deed. But when the *cestui que trust* is not a party to the suit, and is a competent witness for either of the parties, and is not shown to have been in any conspiracy with the person to be affected by his declarations, we do not see on what principle his declarations, which are mere hearsay, are admissible, and in our opinion the declarations of Boyle were improperly received as evidence against the defendants.

The term fraud, as understood in the statute concerning fraudulent conveyances, has the same meaning in the attachment law, and it is not necessary to show that the act originated in any meditated design to commit a positive fraud or to injure other persons. There are many acts not the result of intentional fraud which the law, nevertheless, from their tendency to deceive other persons, or from their injurious consequences to the public, prohibits as being within the same reason and mischief as actual fraud. And whatever, by the judgment of the law, is denounced as fraudulent must

be regarded in the same light in reference to an act or transaction which is made the ground of an attachment; and if the act charged to have been committed is fraudulent, actual or constructive, it will be inferred that the party intended its natural and ordinary results should follow. There are thirteen cases in which an attachment may issue under our statute, and it will be observed that the "intent" of the party liable to the writ is not a necessary ingredient except for the causes enumerated in the fifth and sixth clauses of the first section. (R. C. 1855, p. 238.) The affidavit will be good if it follows the language of either of the clauses, and it is never necessary to prove more than the party is required to swear to. If the attachment is based on either the seventh, eighth, ninth or tenth clauses, it will be sustained on proof that the defendant fraudulently had done or was about fraudulently to do any of the prohibited acts; and whether the act be fraudulent will depend on the judgment which the law pronounces upon it.

The other judges concurring, the judgment will be reversed and the cause remanded.