MOLASKA MANUFACTURING COMPANY, Appellant, v. STEELE AND WALKER, Garnishees of THOMAS A. DAVIS, Respondents.

### Kansas City Court of Appeals, May 20, 1889.

**Fraudulent Conveyances :** CREDITOR PURCHASING DEPTOR'S PROPERTY TO SECURE HIMSELF MUST TAKE THE SAME WITHOUT ANY SECRET TRUST : CASE ADJUDGED. D., being indebted in excess of his ability to pay, made an absolute conveyance, in writing, to S. of his stock of groceries, etc., and put him in possession. The consideration was the satisfaction of S.'s claim and the payment of another small claim, the two aggregating one thousand dollars. On the trial of a garnishment proceeding wherein K., another of D.'s creditors, had summoned S. as garnishee and had attacked said sale and conveyance as fraudulent, there was evidence tending to show that said stock of groceries was worth some eighteen hundred dollars, and that there was a secret verbal understanding that after making the one thousand dollars out of said stock, S. was to turn over the remaining proceeds thereof to D. or his wife. *Held*, that an instruction, which told the jury, that if the property mentioned in the bill of sale was delivered to S. and, in consideration therefor, he paid D. one thousand dollars by satisfying debts held by him, and one Willman to that amount, to which said Davis agreed, and said sum was the reasonable value of said property and if said S., by reasonable efforts, was unable to realize more than one thousand dollars therefor upon the sale thereof, then the verdict must be for S. even if the jury find from the evidence that there was a verbal agreement on the part of S. to pay D., or his wife, any surplus arising from the sale of such property above the amounts of the debts aforesaid, was fatal error. The common and statutory law alike condemn such secret trusts as fraudulent and avoid the entire transaction, regardless of the actual good faith of the parties and regardless also of the further fact that the creditor's claim equals or even exceeds, in value, the property so taken in trust, and the jury should have been so instructed.

*Appeal from the Buchanan Circuit Court.*—HON. R. B. VINEYARD, Special Judge.

REVERSED AND REMANDED.

Statement of the case by the court.

The facts, briefly stated, giving rise to this suit, are these:

On November 8, 1886, Thomas A. Davis, a retail grocery merchant at St. Joseph, Missouri, was indebted in excess of his ability to pay, and among his creditors were the garnishees herein, Steele and Walker, and the plaintiff manufacturing company.

On said November 8, at the solicitation of said Steele and Walker, Davis, the debtor, agreed to, and did, transfer his entire stock of goods, horse, wagon and accounts—indeed all the property he had—to said Steele and Walker, and in consideration thereof Steele and Walker acknowledged satisfaction of their claim of about eight hundred and seventy dollars against Davis and agreed to, and did, pay off one other claim against Davis, to-wit, of one Willman & Co., for about one hundred and thirty dollars. The plaintiff in this action on the next day, November 9, brought its suit in attachment against Davis, and garnished Steele and Walker, and thereby seek to charge said garnishees on the ground that the transfer from Davis was fraudulent and void as to the other creditors of said Davis. Steele and Walker claim that they took said goods, accounts, etc., from Davis as an absolute, unqualified purchase, and that Davis had thereafter no interest whatever in the same, and rely upon an absolute bill of sale made by Davis on November 8, 1886, reciting the consideration to be one thousand dollars.

The plaintiff, to attack this, relies on the facts as stated by Davis, who, at the trial, testified substantially as follows:

"On and prior to November 8, 1886, I was keeping a family grocery store at number 1302 North Fourth street, the northwest corner of Fourth and Isabelle streets, and on that day I was indebted to the parties

named in the denial of the garnishee's answer, to the amounts therein specified, also to Lee Willman & Co., three hundred dollars, to R. Willman, about one hundred and twenty-five or one hundred and thirty dollars, and to Steele and Walker, these garnishees, about eight hundred and seventy dollars.

"On the eighth day of November, 1886, at about ten o'clock, or half-past ten at night, I sold to Steele and Walker my entire stock of groceries, fixtures, notes, and accounts, horse, wagon, and harness, all of the value of sixteen hundred to eighteen hundred dollars, for one thousand dollars, to be paid by a discharge of my indebtedness to them, and the assumption and payment by them of my indebtedness to R. Willman & Co., the balance to be paid to me. Steele and Walker were to replenish the stock and carry on the business until they made out of it all they had put into it, including the one thousand dollars which they had agreed to pay, as I have stated, giving me employment in the meantime, and then turn it back to me, or to my wife, as I might direct.

"The negotiations on the part of Steele and Walker, neither of whom were present at any part of the time, were conducted by W. B. Craig. Mr. Zimmerman was present during the negotiations, representing Steele and Walker, and took an active part in them. They, with Mr. Craig, remained at my store until about half-past ten o'clock, when we arrived at an agreement. Mr. Craig, Mr. Zimmerman, and myself then went to Mr. Zimmerman's office, and Mr. Zimmerman drew up a bill of sale for me to sign, which conveyed all of the property, notes, and accounts to Steele & Walker, absolutely and unconditionally.

"I signed it, and then asked that the other part of the agreement, by which Steele and Walker bound themselves to replenish the stock and carry on the business until they got all their money out, and then turn it back to me or to my wife, as I might direct, be

put in writing also, but Mr. Zimmerman said that some things would have to be understood between us. This was about eleven o'clock at night, and I had delivered possession of all the property to Steele & Walker, given them the key of the store, and had in my possession, receipted, their bill against me."

The issues between the plaintiff and the garnishees were tried in the circuit court by court and jury, the garnishees succeeded, and plaintiff appeals to this court.

*Thomas & Dawe,* for the appellant.

(1) The statements of an agent, made in the transaction of the principal's business, is a part of the *res gestae*, and is competent evidence against the principal. *Brooks v. Jameson,* 55 Mo. 505 ; *Robinson v. Walton,* 58 Mo. 380 ; *Caldwell v. Henry,* 76 Mo. 256. (2) A conveyance of property, real or personal, absolute on its face, but accompanied with a secret trust for the grantor's benefit, is fraudulent in law and void. *Bullene v. Barrett,* 87 Mo. 185 ; *Reed v. Pelletier,* 28 Mo. 173 ; *State to use v. Tasker,* 31 Mo. 495 ; *State to use v. Jacob,* 2 Mo. App. 183 ; *Coburn v. Pickering,* 3 N. H. 423 ; *Coolidge v. Melvin,* 42 N. H. 522 ; *Lang v. Stockwell,* 55 N. H. 563 ; *Parker v. Pattee,* 4 N. H. 176; *Twyne's Case,* 1 Smith's Leading Cases, 34 ; *Passmore v. Eldridge,* 12 Serg. and R. 198; *McCullaugh v. Hutchins,* 7 Watts, 434; *Connelly v. Walker,* 45 Penn. St. 449. (3) That such conveyance is made without a fraudulent intent and is supported by an adequate and valuable consideration, does not alter the rule. The law pronounces it void without regard to the intent or consideration. *Coburn v. Pickering,* 3 N. H. 423 ; *Coolidge v. Mason,* 42 N. H. 522 ; *Parker v. Pattee,* 4 N. H. 176 ; *Passmore v. Eldridge,* 12 Serg. and R. 201 ; *State to use v. Jacob,* 2 Mo. App. 183 ; *Bullene v. Barrett,* 87 Mo. 188 ; *Twyne's Case,* 1 Smith's Leading Cases, 34. (4) The fact, if it be a fact, that one thousand dollars was the reasonable value of the property, and respondents by

reasonable efforts were unable to realize more than one thousand dollars for the property, does not purge the conveyance of the fraud and render it valid. *Twyne's Case*, 1 Smith's Leading Cases, 34; *Parker v. Pattee*, 4 N. H. 176; *Passmore v. Eldridge*, 12 Serg. and R. 201. (5) If the writing signed by Davis had contained the entire agreement, as set forth in the denial of the garnishee's answer, it would have been fraudulent in law and void upon its face, notwithstanding the motives of the parties may have been ever so pure. *State to use v. Mueller*, 10 Mo. App. 87. (6) When the reservation, or trust, is shown by parol evidence the law pronounces upon it the same judgment that it does when it appears on the face of the instrument. *Bullene v. Barrett*, 87 Mo. 185; *State to use v. Jacob*, 2 Mo. App. 183.

*E. C. Zimmerman* and *Green & Burns*, for the respondents.

It was not claimed that the transaction between Steele and Walker and Thomas A. Davis was fraudulent in fact, but that it was fraudulent in law; it was therefore properly overruled. *Phelps v. Curtis*, 80 Ill. 109; *Lobstein v. Lehm*, 9 West. Rep. 534; *Nash v. Thornant*, 5 Mo. App. 542; *Greely v. Reed*, 74 Mo. 309; *Petrinig v. Christler*, 90 Mo. 690; Jones on Mortgages, (Chattel) sec. 178. This finding was properly overruled because it required a finding by the jury in favor of plaintiff for the total value of the goods. Without deducting the amount of Steele and Walker's debt, plaintiff could not possibly have been entitled to more than the surplus. Bump, pp. 482, 483, 484. It was admitted that there was no intentional fraud associated with this purchase; therefore if you set aside the bill of sale you leave the property in the hands of Steele and Walker, pledged to them as security for their debt, and therefore not garnishable or attachable by the other creditors of Davis. *Richard and Robinson v. Levin*

16 Mo. 596. See appellant's abstract, p. 21, sec. 4, where the appellant states that the principal error in this case was committed by the court by giving respondent's fourth instruction. The evidence conclusively shows that they paid Davis for the property they purchased of him—the sum of one thousand dollars; that it was not worth in the market more than the sum of seven hundred dollars or eight hundred dollars, and that by all proper and reasonable exertion on the part of Steele and Walker that they did not realize out of said property sufficient to pay their debt. Then an agreement to return a surplus to the seller or his wife signified nothing. It was an agreement in relation to something which at that time did not exist, and never did exist. *Alba v. Webster*, 16 N. H., p. 363; *Slater v. Dudley*, 18 Pick., p. 373; Bump on Fraudulent Conveyances, p. 219; *Mansur v. Willard*, 57 Mo., p. 347. Bump on Fraudulent Conveyances, pp. 204, 205, 211, 214. (2) In an attachment brought on the ground that defendant had fraudulently conveyed his property and effects, it must be shown that the conveyance was made for a fraudulent purpose or with a fraudulent intent. It is not sufficient that the effect of the conveyance was to delay creditors. *Spencer v. Degh*, 34 Mo., p. 455; Bump on Fraudulent Conveyances, page 582. (3) Fraudulent acts need not be proved by positive testimony, but there should be a chain of circumstances, such as would reasonably satisfy the mind of their commission, when one has made the opposite party his witness he can not after impeach his credibility. 50 Mo., p. 239. *Bruce to the use of v. Sims*, 34 Mo., p. 246. The only witness in this case whose testimony was competent was contradicted by the bill of sales signed and acknowledged by him, the said Thomas A. Davis. We claim that the evidence does not make a *prima facie* case, and that the court should have instructed the jury to find for the defendant. If from the whole record a

proper result was reached, this court will not reverse this cause on account of the mode of reaching such result.

GILL, J.—Of the errors complained of, we shall only notice one, as we do not regard the other matters of any substantial merit. Instruction numbered 4, given at the request of the garnishees, did not, we think, correctly advise the jury as to the law of this case. Said instruction reads as follows :

"4. The court instructs the jury that if they find from the evidence that the property mentioned in the bill of sale read in evidence was delivered to defendant, and that in consideration thereof said defendant paid said witness Davis the sum of one thousand dollars by satisfying debts held by them, and one Willman to that amount, to which said Davis agreed, and that said sum was the reasonable value of said property, and that said Steele and Walker, by reasonable efforts, were unable to realize more than one thousand dollars for said property upon sale thereof, then the verdict must be for defendant, *even if the jury find from the evidence that there was a verbal agreement on the part of Steele and Walker to pay Davis, or his wife, any surplus arising from the sale of such property, above the amount of the debts aforesaid.*"

The practical effect of this instruction was to declare to the jury that although they may believe that the transaction as related by the debtor Davis, yet if the goods so transferred did not realize and were not worth more than the one thousand dollars, as stipulated in the bill of sale, then the verdict should be for the garnishees. In other words, even though the jury should believe, as stated by Davis, that Steele and Walker were to take the goods (which he Davis estimated worth eighteen hundred dollars) and pay therefor one thousand dollars (in satisfying their own claim of eight hundred

and seventy dollars and paying off Willman's claim of one hundred and thirty dollars), and that Steele and Walker took an absolute bill of sale of the store, but with the private agreement made at the time to carry on the business and run the store until reimbursed for said one thousand dollars and then return the remainder to said Davis (or to his, Davis', wife), yet, if it turned out, on the disposition of said goods, that they were not in fact worth more than one thousand dollars, and that this was all that Steele and Walker could, by proper effort, realize from their sale, then the transaction was legal and binding as to this plaintiff and other neglected creditors.

It is the settled law of this state that a creditor may, in good faith, purchase the goods of his debtor, and thereby secure the payment of his claim, even though in so doing he may absorb the whole estate, and leave other creditors unprovided for, *provided* such transaction is for the sole purpose of securing the creditor's claim, and provided there shall not be an effort thereby to keep the debtor's assets from other creditors. See *Hanna et al. v. Finley*, 33 Mo. App. 645, decided at the last term of this court, and authorities there cited.

However, "a sale of goods, in order to be considered as made *bona fide*, with respect to the creditors, must be made without any trust whatever, either express or implied.

"It is not permitted to a debtor to convey away his goods, by sale, with any secret understanding between him and the vendee, that the goods shall be holden for the benefit of the vendor, in any way whatever. The nature of the benefit, reserved in the sale, is immaterial. Any thing of this kind is a trust and what the law denominates a fraud. Nor are the grounds, on which this doctrine is founded, unsatisfactory. All conveyances, with secret reservations for the benefit of the

vendor, tend directly to hinder and delay creditors. They hold out false colors and false appearances, and mislead and deceive creditors.

"They give to the property of the vendor the appearance of belonging wholly to another, when in truth, he has an interest in it, concealed under the trust.

"It is for this reason that a trust of this kind is, in law, a fraud. As the obvious tendency of these reservations and trusts is to deceive and defraud creditors, the courts do not stop to inquire as to the particular motives in each case, but, relying on the presumption that every man intends the consequences of his own acts, have at once pronounced all these trusts frauds, not only within the meaning of the statute but at a common law." *Coburn v. Pickering*, 3 N. H. 424 ; *Parker v. Patte*, 4 N. H. 178 ; *Connelly v. Walker*, 45 Penn. St. 449.

The law condemns such secret trusts as fraudulent, and avoids the entire transaction, regardless of the actual good faith of the parties thereto. *Reed v. Pelletier*, 28 Mo. 177 ; *State to the use of v. Tasker*, 31 Mo. 448.

It is immaterial, too, whether the whole agreement may appear in the writing itself, or that on its face it may appear entirely fair, and the impeaching facts attached by extrinsic evidence, as the same legal consequences follow, from the facts, regardless of the manner of proof. *Bullene v. Barrett*, 87 Mo. 189. Neither will the creditor, acting as the secret trustee for the benefit of the insolvent debtor, be saved from the consequences, by a showing that his claim equalled, or exceeded in value, even, the property so taken in trust. *Passamore v. Eldridge*, 12 Serg & R. (Pa.) 198 ; *Parker v. Patte*, 4 N. H. 176.

In 12 Serg & R., *supra*, at p. 201, this exact point was made, and in the consideration thereof the eminent judge uses language peculiarly applicable to the case at

Molaska Mfg. Co. v. Steele & Walker.

bar. "But, it is said, that other creditors had no concern in the property conveyed, because its whole amount was not equal to the debt due to the Robinsons. In answer to this, however, it is to be observed, that at the time of executing the deed, it was supposed by the parties that there might be a surplus, because that event is provided for," etc. So here, if the evidence of the debtor Davis is to be credited, he insisted that his property was several hundred dollars in excess of the claims of these garnishees and Willman's combined, and urged them to agree to pay off others. They did not do this, however, but did agree, as Davis testifies, that they would continue to run the store until out of the proceeds the one thousand dollars was paid and then turn over the surplus to Davis. The substance then of that agreement was, as detailed by Davis, that it should appear to be on its face an absolute sale of the goods for one thousand dollars, but that there was a secret understanding that Steele and Walker should continue the business, out of the proceeds pay the one thousand dollars, and return the remainder to Davis.

If this was the true state of the agreement, then it was such as the law condemns as fraudulent and void, and the jury should have been so instructed, and that, too, regardless of the outcome of the venture, whether there was anything left to give back to Davis or not.

For the reason then that the court erred in giving said instruction number 4, the judgment must be reversed and the cause remanded for a new trial. All concur.