M. H. PATTISON & SON, Appellants, v. NINIAN LET-
TON, Respondent.

Kansas City Court of Appeals, January 29, 1894.

1. Fraudulent Conveyances: ABSOLUTE BILL OF SALE TO SECURE
DEBT. A bill of sale of personal property, absolute on its face but
made in fact to secure a debt, the vendee afterwards taking posses-
sion as absolute owner under the bill of sale, in effect embodies a
secret trust and is, therefore, void as to attaching creditors, and the
fact that the goods were of less value than the debt, will not save the
sale, nor will the further fact that the debt was for purchase price of
the goods.

2. Appellate Practice: ISSUES NOT IN RECORD. Issues not made in
the trial court will not be passed upon in the appellate court.

*Appeal from the Clay Circuit Court.*—HON. JAS. M.
SANDUSKY, Judge.

AFFIRMED.

*J. E. Lincoln* and *D. C. Allen* for appellant.

(1) A conveyance of property, as security for the
payment of money, is a mortgage, no matter what the
parties intend in reference to redemption. The con-
veyance may be absolute on its face, and the result in
equity is the same; and parol evidence is competent
to show the intention of the parties and the real char-
acter of the transaction. The foregoing conclusions,
are the law of Missouri, and may be, with safety,
asserted to be the general law in England and America.
Those conclusions apply equally to conveyances of
realty as of personalty. Tested by those conclusions
the bill of sale in controversy from Benton to Patti-
sons is a mortgage given to secure his notes to Patti-
sons, aggregating $5,000. Accordingly the circuit

court erred in refusing to give appellants' instructions numbers 2 and 3. *Wilson v. Drumrite*, 21 Mo. 325; *Turner v. Kerr*, 44 Mo. 429; *Worly v. Dryden*, 57 Mo. 226; *Hach et al. v. Hill et al*, 106 Mo. 18; *Hargadine v. Henderson*, 97 Mo. 375, but see 386 and 387; *Cobb v. Day*, 106 Mo. 278; 2 Hilliard on Mortgages [2 Ed.], p. 287, section 27; Jones on Chattel Mortgages, [3 Ed.], section 14; 1 Jones on Mortgages [4 Ed.], section 41; 4 Kent's Com. [9 Ed.], top pages 158, and 159, and notes. (2) The learned judge of the circuit court evidently based his decision and rulings on the New Hampshire cases and those of courts following the New Hampshire cases. In so doing, he was, it is submitted, inadvertently misled as to the facts of them. The facts in the case before the court, are not the facts in the New Hampshire cases. A careful analysis will show this to be true. Here is a sale September 3, 1890, in good faith by the Pattisons (amply solvent at the time), to Benton, who appears to have owed nothing at the time, or if he did, the Pattisons knew nothing of it, and the intention of the parties was, by the bill of sale to secure notes given for the purchase money, and not to secure antecedent debts. In *Coburn v. Pickering*, 3 N. H. 424, the seller retained the property. In *Parker v. Pattee*, 4 N. H. 178, the sale of goods was by debtor, with secret trust as to surplus in his favor. In *Smyth v. Carlisle*, 16 N. H. 464, the conveyance was by debtor with secret trust. In *Ladd v. Wiggins*, 35 N. H. 421, the same was true as in the case in 16 N. H. In *Stratton v. Putney*, 63 N. H. 577, the conveyance was by a debtor to secure an antecedent debt. There was no agreement between the Pattisons and Benton as to the residuum, if any, after payment of the notes, or, if there was, it was what would be a mere implication of law. (3) If there be nothing said in a mortgage—as in this case—as to the disposition of the surplus not

needed to discharge the indebtedness, it, by implication of law, goes to the mortgagor. And this is true equally in a mortgage as in a deed of assignment. A resulting trust is involved in favor of the mortgagor or grantor. Jones on Chattel Mortgages [3 Ed.], sections 352, 353, 712 and 817; Bump on Fraudulent Conveyances [3 Ed.], 404; *Hargadine v. Henderson, supra, loc. cit.* pp. 384, 385. (4) The learned judge of the circuit court, reasoning under the influence of the New Hampshire cases, it is submitted, was also misled as to the facts of the cases cited by him in his opinion from the Missouri Appeal reports. (5) There is no discernable difference in principle between this case and the case where a mortgage is not acknowledged, or its record is ineffectual by reason of any irregularity, but is good between the parties thereto, as laid down by Jones on Chattel Mortgages [3 Ed.], section 178. Appellants' possession covered any defects in the bill of sale, if there were any. *Greeley v. Reading*, 74 Mo. 309; *Petring v. Chrisler*, 90 Mo. 649; *Dobyns, Trustee, v. Meyer et al.*, 95 Mo. 132; *McIntosh v. Smiley*, 107 Mo. 379; *Markey v. Umstadat*, 53 Mo. App. 20, *loc. cit.* 22. The learned judge, in support of his position, cited the case of *Link v. Harrington*, 41 Mo. App. 635; also, 43 Mo. App. 561; 36 Mo. App. 496; 40 Mo. App. 635. On examination, it will be seen these cases do not apply. There is no "secret trust" here. Appellants' possession is sustained by the following cases: *McIntosh v. Smiley*, 32 Mo. App. 125; s. c., 107 Mo. 377; *Petung v. Chrisler*, 90 Mo. 649; *Dobyns v. Meyer*, 95 Mo. 132; 53 Mo. App. 20–22.

*Hardwicke & Hardwicke* for respondent.

(1) The bill of sale, offered in evidence and relied on by plaintiffs, having been given to secure payment

of indebtedness of the grantor therein, the grantor still had an interest in the property conveyed thereby; which interest was held by plaintiffs, in trust for the grantor. Sections 1 and 3 of brief of Hon. D. C. Allen for appellant. (2) Such interest was not disclosed, but concealed, by the bill of sale. The law condemns such trusts, as fraudulent, and avoids the entire transaction, regardless of the actual good faith of the parties thereto. *Reed v. Pelletier*, 28 Mo. 177; *State to use Voullain v. Tasker*, 31 Mo. 448; *Mfg. Co. v. Steele & Walker*, 36 Mo. App. 496; *Bank v. Lime Co*, 43 Mo. App. 561. Possession of plaintiff, under the bill of sale, did not purge the transaction of fraud. *Bank v. Lime Co., supra*. The fact that their claim was for purchase money does not change its character. *Straus v. Rothan et al*, 102 Mo. 261.

ELLISON, J.—This action is replevin against the sheriff of Clay county in which judgment was given for defendant on a trial below by the court without a jury.

Plaintiffs sold and delivered to one Benton a stock of drugs for the agreed price of $6,000. A deed to real estate was taken at the time, as payment of $1,000, and Benton's five notes of $1,000 each and due in one, two, three, four and five years, were taken for the balance of the purchase price. Benton executed to plaintiffs a bill of sale conveying such stock of goods back to plaintiffs. This was done on the private understanding between the parties that it was a conveyance to secure the payment of the notes, but the bill of sale itself was an absolute conveyance of the property. Benton remained in possession of the property and sold in the usual course of mercantile retail trade. On Benton's request plaintiffs did not record the bill of sale, thus leaving Benton as the apparent owner with-

out incumbrance. After several months had elapsed, plaintiffs, becoming dissatisfied as to the manner in which Benton was handling the stock, recorded the bill of sale and took possession of the property. A few days thereafter, attachments were levied at the suit of Benton's creditors, the sheriff taking the goods from plaintiffs under the attachment writ as being Benton's property. Plaintiffs thereupon brought this replevin as before stated.

It was ruled in an opinion delivered by Hall J., in *McIntosh v. Smiley* (32 Mo. App. 125; s. c. 107 Mo. 377), that a sale of personal property where possession was not delivered to the vendee in a reasonable time as required by statute, (Revised Statutes, 1889, section, 5178), was nevertheless, not only a valid sale between the parties, but was valid as to creditors, provided, in the latter instance, that delivery was had before such creditors' attachment was levied on the property. But this case has no application here, and is only mentioned for the reason that it was referred to at the argument. In that case there was a sale in fact as well as avowal; it was an absolute sale without color or other pretense. The question decided was, whether it was a valid sale as such. In this case there was an avowed absolute sale, but in fact a sale with a defeasance—a right of redemption in the vendor. The transaction here was, as between the parties, a valid mortgage. And it thus results that the real question for our decision is, whether it is a valid mortgage as against the attaching creditors, It is the law in this state that though a chattel mortgage is void as against creditors, which permits the mortgagor to remain in possession, with right of unrestricted disposal of the property, yet that, if before a levy of the creditor's attachment, the mortgagee, in good faith, takes possession, he would prevail over such creditor. *Greely v. Reading*, 74 Mo. 309; *Dobyns v.*

*Meyer*, 95 Mo. 132. It was, doubtless, the cases just cited, together with *McIntosh v. Smiley, supra,* which led plaintiffs to ask of the court a declaration of law declaring the instrument valid as against the attaching creditor, whether it be regarded as a bill of sale or a mortgage. But this was a view of the case far too circumscribed, in consideration of the facts developed therein. In the McIntosh case there was a sale in fact, and so avowed; the others were mortgages in fact, and so avowed; possession being afterwards delivered to cure defects in the original transaction, the true nature of which being at no time concealed. In this case the real nature of the transaction was concealed from the start. In the first place the bill of sale was kept off the records and Benton permitted to remain in possession as absolute owner; in the second place the bill of sale was recorded and possession taken thereunder by plaintiffs *as absolute owners.* Neither instance represented the truth, in point of fact. When plaintiffs took possession under the bill of sale conveying absolute title, they were, in fact and effect, holding the property in secret trust for Benton, the attachment debtor, for he held a right of redemption. He was, in legal effect, the owner subject to a lien for the amount of his indebtedness to plaintiffs. He had an interest in the property which was hidden under plaintiffs bill of sale. This was a fraud which the law will not permit, regardless of the actual motives of plaintiffs. The law will presume them to have intended the inevitable consequences of their acts. *Reed v. Pelletier,* 28 Mo. 177. The foregoing views find direct support in two cases decided by this court. *Molaska Mfg. Co. v. Steele,* 36 Mo. App. 496; *National Bank of Hankato v. K. C. Lime Co.,* 43 Mo. App. 561. And in *State to use v. Koch,* 40 Mo. App. 635, by the St. Louis court of appeals.

Section 5170 of our statutes of fraudulent conveyances is, in the particular applicable to this case, but a reproduction of statutes 13 Eliz. and 27 Eliz., which are held to be merely a declaration of the common law. *Twyne's case*, 3 Coke 82; *Hamilton v. Russell*, 1 Cranch. 309. It is therein declared that, "Every conveyance," etc., of "goods and chattels" etc. "made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions" shall be void.

I can conceive of nothing which will more clearly deceive and hinder a creditor than the concealment of his debtor's property. Benton had an interest in the property in dispute, which plaintiffs were concealing under a claim of absolute ownership. This was a concealment just as reprehensible and quite as effectual as if they had hidden it in their cellar. It was a contrivance naturally calculated for such purpose. The motive governing plaintiffs need not be made to appear, as they will be presumed to intend the natural consequences of their act. *Bigelow v. Stringer*, 40 Mo. 206; *Snyder v. Free*, 114 Mo. 376. Whatever the motive, the effect was, as was said in *Passmore v. Eldridge*, (12 Sergt. & R. 201), a collusion between the parties to protect the debtor's property from the process of other creditors and is within the words and spirit of the statute. The transaction embodies a secret trust for the ultimate benefit of him who, with his vendee, has declared to the world that he has made an absolute conveyance of the whole title. *Connelly v. Walker*, 45 Pa. St. 449. In *Parker v. Pattee*, 4. N. H. 178, it is said that, "The reason why the law denounces, as wanting in good faith and fraudulent, a bill of sale purporting an absolute conveyance of property, but attended with a secret trust, is, that it holds out false colors; that it is evidence to prove the contract to be different from what it is in reality, and is calculated to

deceive and mislead creditors and may be used for that purpose. And the law presumes, that he who buys goods of a person in debt and takes evidence of the contract which is, in its nature false, intends to use it for the purpose of deception, and to defeat that purpose declares the contract to be void for that cause."

The question (substantially) arose before the supreme court of the United States at an early day. The case did not involve a conveyance with a secret defeasance, but the facts showed that the property was a slave whose use and labor was continued in the vendor. Chief Justice MARSHALL in discussing the case, said that, "Modern decisions have taken this question up upon principle, and have determined, that an unconditional sale, where the possession does not accompany and follow the deed, is, with respect to creditors, on the sound construction of the statute of Elizabeth, a fraud, and should be so determined by the court." Proceeding to state the opinion of himself and associates he said: "We think that the intent of the statute is best promoted by that construction; and that fraudulent conveyances, which are made to *secure to a debtor a beneficial* interest while his property is protected from creditors, will be most effectually prevented by declaring that an absolute bill of sale is itself a fraud, unless possession accompanies and follows the deed." (Italics ours.) *Hamilton v. Russell*, 1 Cranch. 309. But a case, for all practical purposes like the one before us, and which is relied upon in *Hamilton v. Russell*, is that of *Edwards v. Harbin*, 2 T. Rep. 587. In that case there was an absolute bill of sale of chattels, though in reality only to secure an indebtedness due the vendee. The possession was left with the vendor with the verbal understanding that if the indebtedness was not paid in fourteen days the vendee should take possession and

sell the property. The transaction was held to be void, as a matter of law, as to the creditors of the vendor.

*Edwards v. Harbin* and *Hamilton v. Russell* have been the subjects of a vast amount of discussion by the courts in this country and England. They, in their entirety, find much support, and, upon the other hand, the soundness of the views expressed by these cases is denied with much vehemence and learning. But wherever they are questioned or denied as authority, it is on the ground that they, in their breadth, make the *mere* retention of possession by the vendor, conclusive evidence of fraud. I have found no case of this class which attempts to qualify or deny, that whenever it appears that an absolute conveyance (falsely claimed to be such) has been made, the effect of which is to cover a secret trust for the use and benefit of the vendor, that such conveyance was not void. Thus, in *Davis v. Turner*, 4 Gratt. 426, a case which repudiates *Edwards v. Harbin* and *Hamilton v. Russell,* Judge Baldwin takes occasion to say during the course of an exhaustive opinion that, "the fraud is to be found in the falsehood of the transaction; in the pretense of a sale when there is none; in the reservation of an interest for the grantor under the cover of a transmission of his right to the grantee." The judge, further on, says: "A man has a right to prefer one of his creditors to the rest, but not for the purpose of securing a benefit to himself against their lawful process."

In *Tyunne's case* (3 Coke, 80) there is this illustratration, viz: "If a man be indebted to five several persons in the several sums of £20, and have goods of the value of £20, and make a gift of all his goods to one of them in satisfaction of his debt, but there is a trust between them, that the donee shall deal favorably

with him in regard to his poor estate, either to permit
the donor or some other for him, or for his benefit, to
use or have possession of them, and is contented that
he shall pay ·him his debt when he is able, this shall
not be called *bona fide* within the proviso of the
statute.'' The policy of the legislative department of
our state government has been, and is, to consider the
real ownership of personal property, in favor of credi-
tors, to be with him who is in the possession as such
owner, *"unless,"* as was said in *Layson v. Rogers* (24
Mo. 192), *"the true condition of the title was manifested
by a deed or will authenticated and recorded in the man-
ner prescribed for that purpose."* Thus mortgages,
gifts, loans and conditional sales, when the possession
remains with the mortgagor, donor, loanor or vendor,
are void as to creditors, unless the condition of the
title is evidenced by writing and duly recorded. In
case of absolute sales, though in writing and recorded,
there must be a change of possession. And in case of
mortgages, even when duly recorded, the mortgage
disclosing the true nature of the conveyance, if the
possession and power of disposal is reserved to the
mortgagor, it is held to be void as to creditors. *Bullene
v. Barrett*, 87 Mo. 185, and cases cited.

The position of the mortgagee would be all the
worse if he took a conveyance which is a falsehood and
which is drawn so as to conceal the vendor's interest.
Such was the conveyance in this case and it was not
cured by subsequently taking possession, for, as we
have stated, this was done under the false claim of
entire ownership. So that, in our opinion, the trans-
action between plaintiff and Benton, whereby the
property attached was transferred from the latter to
the former, was void as to creditors, under section 5170,
Revised Statutes, 1889. It was made and contrived so
as to hinder, delay and defraud creditors. *Bigelow v.*

*Stringer*, 40 Mo. 206; *Donovan v. Dunning*, 69 Mo. 441. The bill of sale itself not disclosing the true nature of the transaction, it was shown by extrinsic evidence which, in its controlling features, was substantially undisputed. The judgment of the law will, in such cases, be pronounced just as though the fatal features had appeared in the face of the deed. *Bullene v. Barrett*, 87 Mo. 185.

It should be borne in mind, as before intimated, that we are not here called upon to consider the question of *mere change of possession* following a sale otherwise *bona fide;* and whether, if such change does not take place, the sale will, as matter of law, be declared fraudulent and void, or, only presumptively fraudulent, to be determined by jury on an issue of fact. If such was the question, it could be easily disposed of, since, however much a matter of disagreement in other states, such sales are declared, by our statute (Revised Statutes, 1889, section 5178), to be void; this being construed to mean void, as a matter of law. *Clalfin v. Rosenberg*, 42 Mo. 439; *McIntosh v. Smiley*, 32 Mo. App. 125.

II. But it is said that in reality Benton could not have had any interest in the goods, as they were of less value than the debt he owed to plaintiffs. This suggestion is answered in *Molaska Mfg. Co. v. Stelle, supra.* Besides, a great reduction in the stock was made by a sale in bulk of a portion of it, by Benton, which sale was doubtless induced by plaintiffs' permitting him to remain in possession as the apparent owner, with the record showing nothing to the contrary.

It was also suggested that plaintiffs' taking possession of the property just prior to the attachment was in the nature of a rescission, plaintiffs delivering up the notes to Benton and he turning over the property.

Whatever argument could be built upon this, is met by the fact that no such issue was made at the trial and no theory of that kind was advanced at that time, so far as the record discloses. The declarations of law asked, show that such contention was not submitted to the trial court. Indeed, the only intimation of such matter which we have been able to discover, was the isolated statement of one of the plaintiffs near the close of the testimony that the notes and deed to the property were to be turned over to Benton.

III. We have taken notice of the point made by counsel that the debt due these plaintiffs from Benton was for the purchase money due on the sale, and we cannot agree that such fact should make any difference in the result or relieve the case from the control of the authorities herein discussed.

IV. It is unnecessary to say (yet we deem the matter of sufficient importance at least to justify the remark) what difference, if any, the case would present if plaintiffs had proclaimed themselves as mortgagees and not owners of absolute title as indicated by their bill of sale. The evidence makes no such suggestion, nor do the declarations asked; on the contrary the plaintiffs acted under the bill of sale as such to the public at large.

The judgment should be affirmed, and with the concurrence of the other judges it is so ordered.